THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
U. G. ORENDORFF, Admr., Appellant.

*Opinion filed February 21, 1914—Rehearing denied April 9, 1914.*

1. INHERITANCE TAX—*only the beneficial interest passing as a result of the death is taxable.* Only the beneficial interest passing from the decedent to the heir as a result of the death is taxable under the Inheritance Tax law, and an absolute transfer or gift of property for valuable consideration at any time before the owner's death, and not made in contemplation of death, is not subject to an inheritance tax as part of the estate of deceased grantor or donor.

2. SAME—*widow and heirs may dispose of decedent's property as they see fit.* Upon the death of a person intestate, the widow and heirs, acting together and all agreeing thereto, may dispose of decedent's property as they see fit, and the widow may exchange her interest in the remainder of the portion of the decedent's property which she would take under the law for a life estate in the whole of such property.

3. SAME—*instrument may give a life estate in personal property without disposing of the remainder.* It is entirely legal for an instrument to give a life estate in personal property, as well as real estate, without disposing of the remainder, and in such case the remainder will be left as it was before the life estate was created.

4. SAME—*when shares of stock are not subject to an inheritance tax.* Shares of stock in which the decedent had a life estate, only,

the remainder being vested in her sons by valid agreement based upon a valuable consideration and not made in contemplation of death, are not subject to an inheritance tax as part of the estate of the deceased life tenant.

APPEAL from the County Court of Fulton county; the Hon. HOBART S. BOYD, Judge, presiding.

MAYER, MEYER, AUSTRIAN & PLATT, and HARVEY H. ATHERTON, for appellant.

P. J. LUCEY, (STEAD, LINCOLN & FITCH, of counsel,) for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an appeal by the administrator (who is also one of the heirs) from an order of the county court of Fulton county fixing the inheritance tax in the estate of Mary Orendorff, deceased. The estate, for appraisal, was fixed by that court at a total value of $724,521.63. The chief question involved on this hearing is whether the deceased, who died intestate, was the absolute owner of certain shares of the capital stock of the Parlin & Orendorff Company or had only a life interest therein.

William J. Orendorff, the husband of said Mary Orendorff, formerly owned a half interest (500 shares) in the Parlin & Orendorff Company, a corporation doing business in Canton, in said county. In 1895, about two years before his death, he caused 100 shares of his stock in said company to be assigned to each of his three sons, William H., Arthur L. and Ulysses G., retaining for himself 200 shares, of which he died seized in 1897. He left said Mary Orendorff, his widow, and said three sons, as his only heirs-at-law. He died intestate, but among his papers was found a document which, besides various recommendations of a religious or ethical nature, contained the following: "It is my desire that in event that mother survive me in life, you

shall set apart and hold in trust for her special benefit and support one-fourth of my earthly possessions after all legal claims against my estate are paid, and I further desire that the remaining three-fourths of my estate shall be equally divided between you three sons, after first deducting from either any just amounts that have been advanced either in cash, notes or board, and that U. G. Orendorff shall have and hold our homestead at a fair valuation, in lieu of so much cash or stock, after mother's death, she to own and hold it so long as she lives and to make her home with U. G. O., or either of you who shall be married and make it your place of residence." This letter was signed by William J. Orendorff and one witness, but it is not contended by any of the parties hereto that it amounted to a valid testamentary disposition of his property. On November 20, 1897, about a month after his death, his widow and three sons, and the respective wives of the sons, entered into an agreement, the main provisions of which are as follows:

"Whereas, said decedent left certain personal property and estate; and whereas, said parties are desirous of making disposition of the same amicably and without the trouble and expense of administering thereon; and whereas, no other person or persons are interested in said personal property and estate except certain creditors for small amounts, who will be duly provided for:

"Now, therefore, this agreement witnesseth, that the said party of the first part, in consideration of the premises and of one dollar in hand paid, the receipt whereof is hereby acknowledged, and in further consideration of the mutual promises and agreements of each other and of the said party of the second part, do hereby sell, transfer, assign and set over to the said party of the second part, in trust, *for and during the natural lifetime of the said Mary Orendorff, (widow,)* the following described personal property and estate belonging to the said William J. Orendorff at the time of his decease, to-wit: One hundred twenty-five (125) shares Parlin & Orendorff Co. stock, as represented by certificate No. 32; two hundred twenty-five (225) shares Consolidated Implement Co. stock of Salt Lake City, Utah, as represented by certificate No. 156. In trust, nevertheless, it being mutually agreed and understood that said party of the second part is to manage and control said personal property and estate above mentioned and described

*for and during the natural lifetime of the said Mary Orendorff, (widow,)* for the uses and purposes following, viz.:

"First, to represent and vote said' stocks, and each part and share thereof, either in person or by proxy, at any and all meetings of the respective corporations issuing the said stock or stocks, and to collect and receipt for any and all incomes, dividends, rents, issues and profits arising out of said personal property and estate, or any part thereof.

"Second, to pay the funeral expenses and all debts of said decedent, and to pay all taxes and expenses necessary to protect said property and estate, and also to pay all expenses necessarily incurred by said trustee in carrying out the provisions of this agreement.

"Third, to pay to said Mary Orendorff, (widow,) for her sole use and benefit, the remaining portion of said income, dividends, rents, issues and profits.

"This agreement to be in full force and effect *for and during the natural lifetime of the said Mary Orendorff, (widow,)* hereby binding ourselves, our heirs, administrators and assigns, jointly and severally by these presents."

The 125 shares mentioned in the above agreement were thereupon issued by the Parlin & Orendorff Company in the form, "Mary Orendorff, U. G. Orendorff, Trustee." The remaining 75 shares of which William J. Orendorff died seized were divided equally among the three sons, each receiving 25 shares. It appears that the business of the company so increased that in 1909 there was a large amount of surplus profits, and several resolutions were passed by the directors and stockholders of the company and certain proceedings were had, as the result of which the capital stock of the company was increased and the 125 shares in question were exchanged for 6250 new shares, which on the books of the company were issued to "Mary Orendorff, U. G. Orendorff, Trustee," the same as were the original 125 shares. Without specifying the details of these transactions here, we will state we have reached the conclusion that for all the purposes of this proceeding the 6250 shares (the new stock) should be considered as representing the 125 original shares, and for convenience the original shares will be referred to. It is conceded that Mary Orendorff

had a life estate in these shares. The question in dispute is as to whether she owned the remaining interest in those shares, or whether said remainder, under said agreement, is owned by the three sons or their assigns. If she owned said remainder, the shares were subject, at her death, to the inheritance tax as a part of her estate. If said remainder was owned by the three sons or their assigns, the shares were not subject to an inheritance tax.

Counsel for the State argue that the elder Orendorff wrote the letter expressing his wishes as to what should be done with his property at his death, and that the family agreed, after his death, to follow his wishes so expressed even though the letter did not have the force of a will. From the testimony in the record we are disposed to agree with them on this point. It does not necessarily follow, however, that this would make the mother, Mary Orendorff, the owner of the remainder, as well as of the life estate, in said 125 shares of stock. It is not entirely clear from his letter, read by itself, that said William J. Orendorff intended his wife to have anything more than a life interest in one-fourth of his property. Neither is the wording of the agreement signed by the mother and three sons, with their wives, after the death of William J. Orendorff, clear on this point. Manifestly, the wording of both the letter and the agreement was such as to leave it an open question as to whom the remainder in the 125 shares of stock belonged during the life of Mary Orendorff. If she had taken what, under the laws of this State, she was entitled to after her husband's death, she would only have taken the absolute title to $66\frac{2}{3}$ shares of the said stock and the sons would have taken an absolute title to the balance of the 200 shares.

In accordance with the provisions of section 18 of the chapter on administration (Hurd's Stat. 1911, p. 11,) the parties in interest were entitled to settle the estate without administration, and according to this record they decided so

to do. Was the force of this agreement of November 20, 1897, such that had Mary Orendorff claimed, while she was living, an absolute interest in these 125 shares,—both the income during her lifetime and the remainder after her death,—as against her children, such claim could have been upheld thereunder? The agreement in three separate places (italicized in the above copy but not in the original) states that the trust was to continue "for and during the natural lifetime of the said Mary Orendorff," and there is absolutely nothing in the agreement that refers to or passed any title in the remainder after her death. Neither do we think there is anything in the agreement wherefrom such an intention could be clearly implied. It would be entirely legal to make an instrument giving a life interest in personal property to the grantee thereunder without any disposition of the remainder, just as it would to give a life interest in real estate without disposition of the remainder. In both cases, unless the instrument creating the life interest, either expressly or by implication sufficiently strong to amount to a legal grant, disposed of the remainder as well as the life interest, such remainder would be left as it was before the life interest was carved out by such agreement. The contents of the letter of the elder Orendorff (not being a will) are only valuable here as showing the motives that may have influenced the parties to said agreement in making it as they did. In our view the provisions of the letter, as well as those of the agreement, would be satisfied by a life interest, only, in the stock, fully as well as they would by giving the widow an absolute interest therein. In this connection it may be noted that the letter requested that the mother take one-fourth of his "earthly possessions," (which would include both real and personal estate,) and apparently this would include the homestead, which is referred to in the agreement. The estate which the mother was requested to be given in the homestead was apparently a life interest, with remainder to the son U. G. Orendorff. If

this be so, such construction would lend support to the view of appellant that the widow was to have set aside to her only a life interest in one-fourth of the estate.

The numerous documents found in the record bearing upon the ownership of the said 125 shares of stock tend strongly to show that the widow and all three sons understood, after said agreement was signed by them, that Mary Orendorff's interest in said 125 shares was simply the right to the income therefrom for her life. After William J. Orendorff's death inheritance tax proceedings as to his estate were instituted in the county court of Fulton county. In those proceedings Mary Orendorff filed an affidavit, in which she stated that her interest in the 200 shares of the Parlin & Orendorff stock left by her husband was "the income from the five-eighths part during my natural lifetime." Five-eighths of 200 shares would be 125 shares. This statement would exactly coincide with the contention of appellant as to what Mary Orendoff received under the said agreement. In the same proceedings, appellant, U. G. Orendorff, testified, on deposition, as to his ownership in his father's estate, including said 200 shares of stock. A portion of his deposition reads as follows:

Q. "How much of this estate have you received absolutely?

A. "One-eighth part.

Q. "How much of this estate do you hold in trust, if any, and who is the beneficiary?

A. "The income of five-eighths part for the benefit of Mary Orendorff during the term of her natural life."

The two brothers of U. G. Orendorff filed affidavits in the inheritance tax proceedings in which they stated that their interest was the same as described in his deposition. In the order fixing the inheritance tax as to the estate of William J. Orendorff, deceased, it was stated as to the interest of Mary Orendorff in said property, after giving the appraised value of said interest, that "by order of court not

taxed because of being a trust fund and a life estate." In 1904 U. G. Orendorff purchased (paying therefor a large amount) all the stock in the Parlin & Orendorff Company held by his brother William H., expressly including in the written agreement between them all right, title, claim and interest in the 125 shares standing in the name of U. G. Orendorff, trustee, subject to the trust agreement during the life of Mary Orendorff. Afterward, William H. Orendorff was adjudged insane and a conservator was appointed by the probate court of Cook county. In the various documents shown in the record of the transactions by U. G. Orendorff with reference to William H. Orendorff's interest, it is apparent that it was considered by all concerned, including the conservator, that William H. Orendorff owned a one-third interest in the remainder in the 125 shares held in trust for Mary Orendorff during her lifetime and had sold his interest therein to said U. G. Orendorff. The other son, Arthur L. Orendorff, sold his interest in the 200 shares of which his father died seized, to his brother U. G. Orendorff, and on this hearing claimed no interest in any of the shares of said Parlin & Orendorff Company here in dispute. U. G. Orendorff therefore claimed to be the owner of the entire 125 shares held in trust by him for his mother during her lifetime and which were no longer subject to her life estate.

Whatever doubt there may have been as to the proper construction of the agreement of November 20, 1897, as to the ownership of the remainder in said 125 shares of stock held in trust during the lifetime of Mary Orendorff for her benefit, there can be no doubt, as shown by this record, that all parties interested in said stock treated said remainder of said 125 shares of stock, after said agreement was drawn, as belonging to the three sons. The mother so treated it; the three sons so treated it; the court, in fixing the inheritance tax on William J. Orendorff's estate, so treated it; the conservator of William H. Orendorff so treated it, and

everything in this record, after that agreement was drawn up, tends to support that conclusion. In view of the interest the law gave her in her husband's estate, there was ample consideration for William J. Orendorff's widow, Mary Orendorff, to sell all her interest in the remainder of said shares of stock for the life interest that was given her by said agreement. Without question, Mary Orendorff and her sons, after her husband's death, could by agreement, acting together, dispose of all his property in any way they saw fit. An absolute transfer or gift of property left by William J. Orendorff, made in good faith, for a valuable consideration, at the time this agreement was made, or any time thereafter before her death, not made in contemplation of death, would not be subject to an inheritance tax at the death of Mary Orendorff as part of her estate. Only the beneficial interest passing from the decedent to the heir as a result of the death is taxable. *People* v. *Sholem,* 244 Ill. 502; *People* v. *Nelms,* 241 id. 571; *People* v. *Griffith,* 245 id. 532.

Many things have been said in the briefs as to matters which do not appear of record, and we shall not discuss them. On this record it must be held that Mary Orendorff, at the time of her death, did not own the remainder in said 125 shares of stock, and the county court was in error in holding that she did own said remainder.

It appears from the record and briefs that other litigation is pending in the courts as to the title to this stock. What is here said has reference only to the ownership of this stock as shown on this record for the purpose of assessing the inheritance tax, and is not intended to control in such other litigation.

The judgment of the county court will be reversed and the cause remanded for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*