(No. 31830.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, *vs.* SIDNEY V. WALKER, JR., Admr., Appellee.

*Opinion filed May 24, 1951—Rehearing denied September 17, 1951.*

Ivan A. Elliott, Attorney General, of Springfield, (William C. Wines, Raymond S. Sarnow, James C. Murray, and A. Zola Groves, all of Chicago, of counsel,) for appellant.

Lederer, Livingston, Kahn & Adsit, of Chicago, (Harry H. Kahn, Daniel J. Gluck, and Maurice B. Wolf, of counsel,) for appellee.

Mr. Justice Crampton delivered the opinion of the court:

On July 20, 1950, the county court of Du Page County entered an order that certain corporate stock, forming the corpus of an *inter vivos* trust created by decedent, Gladys Kroehler, is not subject to inheritance tax in her estate. The People appeal directly to this court on the ground that the revenue of the State is involved.

The facts are largely undisputed. Decedent's father was the founder of a manufacturing corporation in Naperville. During the period in question she owned 30,000 shares of its stock, which she had acquired through gifts from him. For some time prior to 1928, the decedent, a married woman with two children, had been having illicit relations with a waiter employed by a country club. She desired to divorce her husband and marry the paramour, and repeatedly consulted her attorney for that purpose. She had no grounds for divorce, however, and was so advised. Her husband, who had grounds for divorce, refused to bring such a suit. Both he and her father wanted to preserve the marriage, both for the welfare of the children and because they apprehended possible physical danger to decedent, a wealthy woman, if she were to become married to the other man, whom they did not consider to be

of good character. Moreover, decedent was apparently highly extravagant and irresponsible, and her father and husband were concerned that if she were divorced from her husband and remarried as she intended to do, her estate would be dissipated. Decedent, however, persisted in her efforts to become divorced. In January, 1928, her attorney received a telephone call from her, in which she told him she was then in a hotel room with her paramour. She asked him to telephone her father and tell him to come to the hotel and "catch" her and bring her husband with him or she would call the newspaper office, have them send reporters to the hotel, and would spread the family name "on the front page of every paper in Chicago." Her attorney immediately called her father and her husband, who then consented to discuss the matter of a divorce.

Several conferences took place thereafter. Decedent's husband finally agreed to institute a suit for divorce if she would establish an irrevocable trust of her stock, under which she and their children would receive the income and the children would receive the *corpus* upon her death. After first refusing to create such a trust, decedent finally consented to do so if her father would pay all her existing debts and also provide her with ten or fifteen thousand dollars for the purpose of defraying the expenses of a honeymoon with the paramour. After further negotiations it was agreed that decedent's father would advance $32,000, of which $21,000 would be used to pay her debts and the balance would be paid to her directly; that she and her husband would convey their home to her father, to be held by him in trust for their two children; that decedent would create an irrevocable trust of her 30,000 shares of stock; and that her husband would institute divorce proceedings.

Accordingly, on March 24, 1928, decedent executed an instrument establishing an irrevocable trust of the stock, and providing that a designated portion of the income be paid to decedent during her lifetime, a further portion be

paid for the support, education and maintenance of the children; and another portion be paid to her father until he had received $8500, which sum was already owing to him by decedent, as well as the additional sum of $32,000 which her father then undertook to advance. After these sums were repaid, the latter portion of the income was to be added to that paid for the support, education and maintenance of the children. The trust instrument further provided in substance that after the death of decedent all of the income be payable to the two children until they attained thirty years, whereupon they would be entitled to receive distribution of the *corpus.*

The trust instrument was deposited with an escrow agent, under an agreement that it would become effective upon its delivery to a designated bank, and that such delivery should be made only if decedent's husband obtained a divorce within six months and a certified copy of the decree was submitted to the escrow agent. The following month decedent's husband filed a suit for divorce, and after hearing the evidence and considering the settlement the court entered a decree granting him a divorce and awarding him custody of the children. The trust thereafter became effective in accordance with the agreement.

After the death of decedent the appellant sought to include the trust assets in her estate for inheritance tax purposes on the ground that they were the subject of a transfer intended to take effect in enjoyment after decedent's death, within the meaning of section 1 of the Illinois Inheritance Tax Act. (Ill. Rev. Stat. 1949, chap. 120, par. 375.) Appellee contends none of the trust assets are liable to assessment for inheritance tax, for the reason that the conveyance was made for valuable consideration, pursuant to a *bona fide* agreement, and was not made with any donative intent. The sole question presented and argued in the briefs is whether the trust is supported by lawful and adequate consideration.

The law is well settled that where a donative transfer is made in which the income from a part of the property is reserved by the grantor for life, such portion of the estate becomes subject to inheritance tax on the grantor's death. (*People* v. *Moses,* 363 Ill. 423; *People* v. *Estate of Moir,* 207 Ill. 180.) It is equally clear that where a transfer is made pursuant to the terms of a contract based upon valid and adequate consideration, the right of succession to the beneficial interest in the property arises out of the contract and not under a testamentary disposition. In such cases the property received is not subject to inheritance tax. (*In re Estate of Johnson,* 389 Ill. 425; *People* v. *Orendorff,* 262 Ill. 246.) In the *Johnson case,* the decedent had entered into a postnuptial written contract with her husband whereby she agreed that in consideration of his paying to her the sum of $10,000 she would bequeath a one-sixth part of her estate to his four children by a former marriage. One of the children thereafter died, and decedent's will bequeathed only a one-twenty-fourth part of her estate to each of the three surviving children, instead of an aggregate of one sixth. A claim by the surviving children for one sixth of the estate was compromised under a settlement whereby they received that portion less the sum of $1000. We held that neither the bequests nor the additional amount received under the settlement were subject to inheritance tax. In that case it was conceded that the contract was based upon a full and adequate consideration and that it was entered into in good faith, with no intent or purpose to evade the tax.

In the present case, it is not disputed that the agreement was made in good faith, without any intent or purpose to evade inheritance taxes. The People insist, however, that it is not based upon valid and adequate consideration. In support of this contention counsel argue that the divorce was the principal consideration for the transfer; that it is against the policy of our law to consider as valid an agree-

ment entered into for such purpose; and that as the consideration was illegal or contrary to public policy it cannot suffice to relieve the estate from liability for inheritance tax. It is clear from the evidence that the trust was made in contemplation of divorce and that it was not to become effective except upon such decree being entered and a copy thereof being exhibited to the escrow agent. It is also apparent that decedent's husband was unwilling to institute divorce proceedings in the absence of satisfactory provision being made for preserving decedent's estate for the benefit of herself and their children. It would seem, therefore, that in its aspect from decedent's point of view the trust was a means of stimulating or inducing her husband to obtain a divorce.

It is the policy of this State to foster and protect marriage and to encourage parties to live together. Because preservation of the marriage relationship is essential to our society, we have held that a contract for a property settlement, made between husband and wife pending a suit for divorce, where it is not shown that a separation had occurred, is contrary to public policy as tending to open a door for the attainment of divorces by collusion, and is, therefore, unenforceable. (*Hamilton* v. *Hamilton,* 89 Ill. 349.) We subsequently had occasion to observe that "Where it is apparent that such a contract is entered into for the purpose of stimulating or inducing one party or the other to institute divorce proceedings, or that the same is for the purpose of purchasing a decree of separation, or amounts to collusion between the parties to secure a decree of divorce, such a contract ought to be, and is, deemed contrary to public policy and void." (See *Shankland* v. *Shankland,* 301 Ill. 524, 533.) We think the same reason applies here: That if the securing of a divorce by the spouse were held to be valid consideration so as to relieve such transfers from inheritance taxes, it would tend

to encourage collusive divorces as a means of avoiding the tax.

, It is true, as appellee urges, that in this case there is no indication of collusion in the sense that the grounds were fabricated or committed by agreement, or that any valid defense to the suit was suppressed. The record discloses that decedent's husband had ample grounds entitling him to a divorce, that for a long period of time immediately prior to the agreement they had not cohabited as man and wife; and that their relations were such that the ordinary objects and benefits of matrimony had long since disappeared. However, it appears that her husband would not have instituted his divorce suit if decedent had not established the trust, and that the primary purpose of the trust was to induce him to do so.

As the divorce was the principal consideration for the trust, it cannot be separated from the advances made to decedent by her father, and the husband's release of dower in the conveyance of the residence, so as to leave the latter two benefits as adequate consideration. The evidence clearly indicates that decedent would not have consented to create the trust unless the divorce were obtained. That provision being contrary to public policy and, therefore, ineffective for the present purposes, the entire consideration must fall together. See *Lyons* v. *Schanbacher,* 316 Ill. 569.

We conclude, accordingly, that inheritance tax liability attached as to that portion of the stock on which the income was reserved to the decedent for life. The order of the county court is, therefore, reversed and the cause remanded to that court for further proceedings in conformity with the views herein expressed.

*Reversed and remanded.*