(No. 14153.—Reversed and remanded.)

JUSTINE M. SHANKLAND, Appellant, *vs.* RALPH M. SHANK-LAND, Appellee.

*Opinion filed February 22, 1922.*

1. CONTRACTS—*when contract for support of child by divorced wife has a consideration.* A contract entered into by a husband with his wife upon his securing a divorce for desertion, whereby he agrees to pay her a certain sum per month for her support and the support and education of their son in the particular manner desired by the husband and stipulated in the contract, is based upon sufficient consideration, and where the wife has carried out her part of the contract until the child is of age the husband must pay the sum stipulated therein to be paid while she remains unmarried.

2. DIVORCE—*when a wife is entitled to permanent alimony although divorce is secured by husband.* Under the Divorce act a wife is entitled to permanent alimony from her husband in a suit brought by him for a divorce where the divorce is granted only upon the charge of desertion.

3. SAME—*a contract for permanent alimony may be valid although entered into prior to divorce decree.* Although a contract entered into for the purpose of inducing one party or the other to institute divorce or separation proceedings is invalid as being contrary to public policy, a contract entered into between husband and wife a few days prior to his obtaining a divorce decree for

desertion, providing for his paying her a certain sum for her support and the support and education of their child in the particular manner desired by the husband, is not invalid, where there is no question of fraud or collusion or his right to a divorce.

APPEAL from the First Branch Appellate Court for the First District;—heard in that court on appeal from the County Court of Cook county; the Hon. HARRY C. MORAN, Judge, presiding.

HOYNE, O'CONNOR & IRWIN, for appellant.

JASPER F. ROMMEL, for appellee.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

In June, 1906, appellant, Justine M. Shankland, and her husband, Ralph M. Shankland, appellee, had been living separate and apart for more than two years. On the 22d of that month appellee filed his bill for divorce in the circuit court of Cook county against appellant charging her with willful desertion on May 1, 1904, and alleging that she had persisted in such desertion without any reasonable cause up to the time of filing the bill. She filed her answer to the bill, and on a hearing before the court a decree for divorce was granted to the appellee as prayed. The court awarded appellant the custody, care, control and education of Ralph H. Shankland, their minor son, who was then ten years and six months old, subject to the right of appellee to visit and have the companionship of the child at any proper time and as frequently as he might desire. The decree for divorce was entered on June 30, 1906, after a hearing had been had on the day previous. A contract was signed by appellant and appellee about two days prior to the hearing of the divorce case, which recited that for ten years, and up to May 1, 1904, appellant and appellee had lived together as husband and wife in the city of Chicago, but had not since said last date lived together or cohabited be-

cause of the disinclination and refusal of appellant so to do, and that appellee had obtained a decree of divorce from appellant in said court and that appellant had been awarded the custody of their son. The next two paragraphs of the contract are in these words, to-wit:

"And whereas it is the desire of said Ralph M. Shankland that his son should be maintained in the style and manner to which he has been accustomed and should be surrounded with the comforts of a properly equipped and well ordered home; that he should be surrounded and brought in contact with people of refinement, culture and good character; that his education should proceed along lines to fit him advantageously for a professional career with credit to himself and family; and realizing the considerable expense involved therein, in order to carry out the proposition herein outlined and to provide the means therefor it is hereby mutually agreed between the said Ralph M. Shankland and Justine M. Shankland that the said Justine M. Shankland shall and will, continuously during the minority of the said son, establish, create, maintain and supervise a comfortable home for herself and her said son; that she takes it upon herself carefully to take care of the welfare and happiness of her son above named; to assist in every possible way in his development and education from a liberal standpoint; to provide him with such comforts, so far as practicable, as he has heretofore enjoyed; to assist in his education to the end that the said son may be fitted for a professional life and to give him such advantages and opportunities as are possible with the means at her disposal; that she will guard him against improper associates, and, on the contrary, to surround his life with good influences, only.

"The said Ralph M. Shankland, in order to provide the means necessary to carry out the desires of the parties hereto, hereby agrees and binds himself to pay unto the said Justine M. Shankland the sum of $125 per month, in installments of $62.50 each on the 1st and 15th of each month,

so long as the said Justine M. Shankland shall have the care and custody of the said Ralph H. Shankland and until his majority; provided, however, should the said Justine M. Shankland re-marry, then such payments shall cease and this obligation be void."

Appellee further obligated himself by the contract to pay the necessary tuition fees for the education of his son and any extraordinary expenses that might be incurred by his illness, said sums to be expended in the discretion of appellant, he having full confidence in her wise application of the same. In the event appellee should die before his son should reach his majority, the contract provided that the allowances should become a charge against his estate and payable by his executors and administrators. Appellee further agreed in the contract that in consideration of such care, custody and control of his son by appellant he would further pay to her $100 per month so long as she remained unmarried and had custody and care of his son if she committed no act which would bring discredit upon herself or their child or that rendered her an improper person to have such custody and control of their son, and should said child die before his majority or arrive at the age of twenty-one years while in her care and custody, then he thereby bound himself to pay to her, in consideration of her care and education of the child, the sum of $125 per month, $62.50 on the 1st and the 15th day of each month, so long as she remains unmarried. Appellee further agreed that should appellant re-marry while having the custody of the child and before his majority, he would pay all necessary expenses that might be incurred in the keeping, maintaining and educating his son. Appellant agreed by the contract that the sums therein provided for should be, when so received, a full and complete release and discharge of appellee of all claims and demands against him for the care and expense incurred by her in the support, education and maintenance of the said child. The agreement recites that

it is executed in duplicate and that each copy shall be an
original. The contract bore date June 29, 1906.

Appellant brought suit in assumpsit on the contract in
the county court of Cook county against appellee for unpaid
installments due on the contract. The declaration contained
three counts: (1) A special count on the contract, setting
it out *in hæc verba;* (2) another special count alleging the
making of the contract, performance by appellant and fail-
ure to make payments by appellee, and alleging that the
sum of $750 was due thereon, with interest; (3) the com-
mon counts were added. The defendant pleaded the gen-
eral issue. There was a jury trial, and at the conclusion
of all of the evidence in the case the court directed a ver-
dict in favor of appellee, and the jury returned a verdict
accordingly. On appeal to the Appellate Court for the
First District that court affirmed the judgment of the county
court entered on the verdict of the jury and granted a cer-
tificate of importance. This appeal followed.

The evidence heard on the trial proved, without ques-
tion, that appellant was still unmarried and that she had
fully and faithfully performed her part of the contract
aforesaid in the care and education of her son. She made
a trip to Europe with the child and was gone about seven
months, during which time they traveled from one country
to another and visited museums, art galleries, operas and
other like places, all of which time he was being specially
tutored by her. On their return to Chicago she sent her
son to a public school,—the William Ray school,—which
he attended four years and until he graduated. He then
went to the Hyde Park high school for five years and grad-
uated there in 1916, in June. He was then in his twenty-
first year and did not go to school any more at the request
and direction of his father but went to work in some oc-
cupation. The trip to Europe and the manner in which the
son was educated and the schools that he attended while
being educated were all approved by appellee. The entire

course and work of appellant in educating and caring for her son was approved by appellee, and there never has been at any time any complaint registered by him against her action in that regard, except that in September, 1910, by letter addressed to her he directed her attention to the fact that the conditions upon which he was to make payments to her were, in part, that the son was to be surrounded with the comforts of a properly equipped and well ordered home and surrounded and brought into contact with people of refinement, culture and good character, etc. In the letter he then makes the objection that she had established herself in a boarding house on Cornell avenue, which he claimed was not in accordance with the contract, and declined to pay any further sums until she complied with her contract in the above particular. Accordingly she changed her residence to an apartment on Harper avenue, referred to in the record as the Hyde Park apartments, and no objection of any kind appears to have been made by him thereafter. Appellee has paid all payments on the contract which fell due up to and including February 15, 1918, but has paid nothing since that date up to the bringing of this suit, in August, 1918.

The only evidence offered in this case on the part of the appellee was that of himself, in which he testified that the contract in question was signed on the 26th or 27th day of June and that the hearing on the divorce case was on the 29th of June, 1906. A certified copy of the decree in the divorce suit shows that it was entered June 30, 1906. It also appears by the testimony of his attorney in the divorce case that the contract was prepared and agreed on between himself and the attorney for appellant previous to the entry of the decree for divorce, but he does not remember the date or the date on which it was signed, and that her attorney has since died.

The sole question in this suit as presented by the parties is whether or not said contract is a legal and binding

301—34

contract upon appellee. It is claimed that as the contract was entered into and signed by the parties before the decree for divorce was granted the same must be held illegal and void because against public policy. It is also intimated that there was no consideration for the contract, as there was and could be no possible legal right of alimony on the part of appellee due appellant or that could thereafter become due to the appellant from appellee under any circumstances whatever, as he was entitled to a divorce on account of her fault and did obtain a divorce for such fault in the divorce suit. It is also argued that if there was any liability on the part of appellee for support and education of the child, this was a legal right that existed independently of the contract and would be no sufficient consideration therefor. So far as the contract is concerned, it is based on ample consideration independently of any right of appellant to recover alimony for her own support. The contract bound appellant to support their child, not in a manner in which she might choose to do and according to her own individual means, but to care for, educate and support the child and provide associates in accordance with the way and manner in which he had been supported, educated and had associates while they were living together as husband and wife. The contract specified all the particulars that appellee required with regard to the education, care, support and associations of the child, and he insisted on their being carried out while it was being performed. She carried it out to the letter, so far as this record shows, until after the child was twenty-one years of age, and now, after his duty has ceased to support, educate and care for the child, he has refused to pay her the balance of the consideration agreed to be paid in that contract for the unusual services she was required to perform. The contract is based on ample consideration and it is not invalid for want of a consideration.

Appellee received his decree of divorce solely on the charge of desertion. There is not a scintilla of evidence in this record, and not a single intimation, that he was not entitled to a divorce on that ground. He had to make the legal proof or he could not have obtained the divorce on the ground of desertion. Appellant testified in this case that she had not lived with him for more than two years prior to the filing of his bill for divorce. There is no indication in the whole record that the circuit court was imposed upon by any character of fraud. Everything in the record indicates that that proceeding was upon the level and that appellee was entitled to a divorce for the sole cause of desertion on the part of appellant for the full space of two years. Appellee is therefore in error in his claim that there is no possible theory upon which appellant could have recovered alimony. This court held in the case of *Spitler* v. *Spitler,* 108 Ill. 120, that under our statute on divorce a wife may recover permanent alimony against her husband in a suit for divorce by him and where she is divorced only upon the charge of desertion. The same holding was made in *Reavis* v. *Reavis,* 1 Scam. 242, and in *Deenis* v. *Deenis,* 79 Ill. 74. There is, then, absolutely no reason why appellant ought not to recover the alimony provided for by this contract except the bare fact that the testimony shows that the contract was signed before the granting of the divorce. Had it been signed after the divorce decree was entered, or· had it been confirmed by the decree of the court and its provisions made a part of the decree, there is no question but that the contract would have been a legal and enforceable contract. This whole record indicates that appellant is a high-class woman, and that is the estimation that appellee placed upon her himself in his contract. Through oversight or neglect of her attorney the contract was not made a part of the decree. We think that, inasmuch as she has performed this contract entirely upon her part, it would be a most inequitable thing for appellee to persist in

not carrying out the remainder of the contract on his part. It is entirely performed except as to the part not performed by him.

We do not think this contract is void because made prior to the decree for divorce. There are some States that hold through their courts' that a contract made between parties before a decree for divorce is granted, for alimony, is generally void, and in *Hamilton* v. *Hamilton,* 89 Ill. 349, this court held that a contract in some respects similar to this was void because it was thought that to permit such a contract as there recited to be enforced in the courts would open a door for the attainment of divorces by collusion. We do not think, however, that the contract in question ought to be considered as on a par with the one in the case above cited. In Bishop on Marriage, Divorce and Separation (vol. 1, sec. 1278,) it is stated as the law that where a separation has already taken place between husband and wife, or it is in agitation and immediately follows, a provision for the wife's support, (separate maintenance,) if on an adequate consideration, will be enforceable, but will not if made during cohabitation and no separation ensues. It was held by this court in *Ross* v. *Ross,* 69 Ill. 569, that where a husband is living separate and apart from his wife by consent, or if he acquiesces in her leaving him, he is liable for her necessary support. In *Phillips* v. *Meyers,* 82 Ill. 67, it was held that where a husband is under legal obligation to support his wife, an agreement on his part to pay money to a trustee for her use, without any promise or agreement on her part, is founded on a sufficient consideration and binding on him and enforceable at law. In Bishop on Marriage, Divorce and Separation (vol. 2, sec. 884,) it is said: "But if nothing is done, intended or adapted to stimulate the divorce proceeding or keep any facts from the court, or to work any sort of fraud upon the public or the law, effect will be given to such mutual property or alimony arrangements as they may fairly make. They ought to lay

their bargaining before the tribunal, and if on inquiry it finds the provision for alimony fair and equitable it will enter a decree pursuant thereto." In *Ward* v. *Goodrich,* 34 Colo. 369, the Supreme Court of Colorado held that a contract between husband and wife, made pending a suit for divorce, which stipulates that the husband shall pay a certain sum per week for the support of his child in the custody of the wife, and which provides that the agreement shall not "abridge, modify or suspend any rights which the parties may have to a divorce" or affect the proceedings in court, is not void as against public policy.

It will thus be seen that there are respectable authorities which hold that such a contract as the one entered into in this case is not necessarily void because it is entered into prior to and pending divorce proceedings. Where it is apparent that such a contract is entered into for the purpose of stimulating or inducing one party or the other to institute divorce proceedings, or that the same is for the purpose of purchasing a decree of separation, or amounts to collusion between the parties to secure a decree of divorce, such a contract ought to be, and is, deemed contrary to public policy and void. As there is no indication in this case that any such fraud or collusion was practiced or intended, we are disposed to hold that the contract in question is a valid and binding contract, and that appellee is bound to the performance thereof on his part notwithstanding the fact that the appellant did not testify in the divorce proceedings and that the contract was made pending such proceedings. It would inflict a very great wrong upon appellant to allow appellee to escape liability on this contract which he has required her to perform completely in the extraordinary manner in which she has performed it and after he has received the full benefit of the contract.

The judgments of the Appellate and county courts are reversed and the cause is remanded to the county court.

*Reversed and remanded.*