Perry E. White, Appellee, v. Sina White, Appellant.

Gen. No. 8,567.

Opinion filed April 27, 1932.

Busch & Harrington, for appellant; C. E. Tate, of counsel.

Little & Finfrock and J. M. Mitchem, for appellee; C. L. Finfrock and J. M. Mitchem, of counsel.

Mr. Presiding Justice Niehaus delivered the opinion of the court.

Perry E. White, the appellee, as complainant, filed a bill in the circuit court of Champaign county, Illinois, for specific performance, against his wife, Sina White, the appellant, alleging that he and his wife are both residents of Champaign county, Illinois, and that on

or about the 21st day of September, 1926, they were living separate and apart; and at that time entered into a written agreement, which is as follows:

"That the parties hereto are husband and wife, and are now and have been for some time last past living separate and apart; and,

"Whereas, each of the said parties hereto are fully advised and informed of the property, estate and prospects of the other, and each of the said parties have been fully advised and informed by their respective solicitors of their respective rights and liabilities against and to the other and to and upon the property and estate of the other; and,

"Whereas, the parties hereto have reached an agreement as in this instrument set forth, in full settlement now and forever of each and all of their respective claims and demands upon and against the property and estate of the other, and of all claims and demands of the one against the other for maintenance, support, alimony, either temporary or permanent, and solicitors' fees, which may or might be involved in any future suit or proceeding, either in law or in chancery, which may be hereafter instituted by the one against the other:

"Now, therefore, the party of the first part, in consideration of the releases, covenants and agreements on the part of the party of the second part herein contained, does hereby covenant and agree to pay to the said party of the second part the sum of six hundred fifty ($650.00) dollars cash, the receipt of which is hereby acknowledged. The said party of the first part further agrees to pay to the said party of the second part the sum of eight ($8.00) dollars per week for the support and maintenance of the said party of the second part; the first payment to be made on Saturday, September 25th, A. D. 1926; and eight ($8.00) dollars on each succeeding Saturday so long as the said party

of the second part continues to be his wife; the said party of the first part further agrees to give and release his interest in the following described household goods to the said party of the second part, namely:

1 Bed

1 Dining room rug

Linoleum on kitchen floor

6 Dining room chairs

3 Rocking chairs

1 Kitchen table

1 Kitchen cabinet

1 Feather bed, which the said party of the second part made

Those dishes which were given to the said party of the second part, and those dishes which she received as prizes

Dresser scarfs

1 Sewing machine

1 Wardrobe

Certain pictures and books of the said party of the second part

Aluminum ware

1 Card table

One chiffonier

The party of the second part's clothing

Bed clothes (which belonged to the said party of the second part's mother)

Glass cans.

"And, in Addition Thereto, the said party of the first part does by these presents remise, release and relinquish unto the said party of the second part, her heirs, devisees, legatees and personal representatives, all his right, title, claim and interest of every kind and character in and to all the property, both real and personal, of which the party of the second part is now seized, possessed or entitled, or of which she may hereafter become seized, possessed or entitled, and the said party

of the first part further covenants and agrees to and with the said party of the second part, her heirs, devisees, legatees and personal representatives, that in the event he should survive the said party of the second part, he will not sue for, claim or demand any right, title or interest either as husband or heir of the said party of the second part, in or to any of the property, either real or personal, of which the said party of the first part may die seized, possessed or entitled, either in possession, remainder, reversion or otherwise:

"And the said party of the second part, in consideration of the payment to her of the said six hundred fifty ($650.00) dollars cash, and the further sum of eight ($8.00) dollars per week for the support and maintenance of the said party of the second part, and further the property which the said party of the first part has released his interest in to her, and in the consideration of the releases, covenants and agreements herein contained on the part of the party of the first part, does by these presents release, remise and relinquish unto the said party of the first part, his heirs, legatees and personal representatives, all her right, title, claim and interest of every kind and character in and to all property, both real and personal, of which the said party of the second part is now seized, possessed or entitled, or of which he may hereafter become seized, possessed or entitled, and the said party of the second part further covenants and agrees to and with the said party of the first part, his heirs, devisees and personal representatives, that in the event she should survive the said party of the first part, she will not sue for, claim or demand any right, title or interest, either as wife or heir of the said party of the first part, in or to any of the property, either real or personal, of which the said party of the first part may die seized, possessed or entitled, either in possession,

remainder, reversion or otherwise, and the said party of the second part further covenants and agrees to and with the said party of the first part to release and does hereby release and completely discharge the party of the first part from any and all claims and demands which she may now have, or which she may hereafter present or assert in any suit or proceeding, either in law or in equity, or for alimony, either temporary or permanent, or for attorneys' or solicitors' fees.

"And each and both of the parties to this instrument hereby expressly covenant and agree to and with the other party hereto, and his or her heirs, legatees, devisees and personal representatives, that this instrument shall operate as a full, complete and final settlement, satisfaction, discharge and adjudication of any and all legal rights, claims or demands of either party against the other, for support, maintenance, alimony or solicitors' fees, or by way of widow's award, homestead, inheritance, dower or any other interest or money demand which might otherwise than for this instrument be asserted by either party hereto against the other party or the property or estate of such other party.

"It is expressly covenanted and agreed by each and both of the parties to this instrument that in the event either of the parties hereto shall at any time hereafter prosecute or institute any action at law, suit in equity or other proceeding in any court whatsoever, otherwise than for the strict enforcement of this instrument, claiming or demanding the property or estate of the other, or any part or portion thereof, or for alimony, or for solicitors' fees, that in such event that this instrument may be pleaded and offered in evidence by the defendant in any such action, suit or proceeding, and shall thereupon be and thereby operate as a complete legal and equitable bar to the further prosecution or maintenance of such action, suit or proceeding,

or to any claim or demand for alimony or for solicitors' fees.

"And each of the parties to this instrument hereby covenant and agree that no judgment or decree shall be entered in bar of the prosecution or maintenance of any action, suit or proceeding brought in any manner for the purpose of annulling, modifying, canceling or waiving any of the covenants, provisions and agreements by this instrument expressed and set forth; it being the express agreement of the parties hereto that this instrument and contract shall have the full force and effect of a judgment and decree finally and permanently settling, determining and adjudicating all the respective mutual rights, obligations, interests and claims of either of the parties hereto against the other, or against the property or estate of the other, mentioned and recited in this instrument.

"And the said parties of the first and second parts do further mutually covenant and agree, each with the other, that during their joint lives they and each of them will, at any time, on request, join the other in the execution of any real estate of which he or she may be seized, or to which he or she may be entitled, in remainder, reversion or otherwise, and make a formal release and relinquishment of his or her contingent right or interest in the real estate of the other.

"In Witness Whereof, the parties hereto have hereunto attached their hands and seals to this instrument in duplicate the day and year first above written.

Perry E. White,                    (Seal)
    The Party of the First Part.
Sina White,                        (Seal)
    The Party of the Second Part.''

The bill further sets forth that the complainant had paid to the defendant, Sina White, the sum of $650 as provided in the agreement, and had regularly paid the $8 a week to the said Sina White up to that time, and

performed all other conditions of the contract; that the complainant, Perry E. White, had borrowed certain sums of money from the Urbana Banking Company in order to make the payments on the contract; that after the execution of the contract the complainant acquired by inheritance from his father and by deeds from his mother and brothers, a fee-simple title to real estate described as: the west one-half (W½) of the northeast quarter (NE¼) and the northeast quarter (NE¼) of the northeast quarter (NE¼) of section two (2); all in township eighteen (18) North (N), range nine (9) east (E) of the third principal meridian, in Champaign county, State of Illinois; that complainant purchased six acres from his mother and seven acres from his brother; that complainant is indebted to his mother for the six acres, together with interest on the amount of said purchase.

That after the execution of the agreement Sina White filed a bill asking a decree of divorce against the complainant; and to have said contract set aside, and to procure an injunction restraining the complainant from disposing of the premises above described or any other property owned by the complainant, and enjoining him from incumbering the same, and procure an order to pay to the defendant, Sina White, certain solicitor's fees in said proceeding; that in consequence of his borrowing, the complainant became indebted to the Urbana Banking Company on the 19th of August, 1929, in the amount of $3,025 with interest; that on said date said bank closed its doors and a receiver was appointed to wind up the affairs of the bank, who has demanded payment of the amount owing by the complainant and has threatened to take judgment on the notes unless the indebtedness is paid; that the complainant since that time has become indebted to Busey's State Bank of Urbana, Illinois, in the amount of $785; that said bank is also demanding payment

and threatening to take judgment; that the premises are in need of repairs; that the complainant has no trade or profession and has been a farmer all his life; that the land has yielded a small income during the past several years and the amount received therefrom has not been sufficient to meet his obligations and to provide funds for the maintenance of himself and his son and the payments to the defendant, Sina White; that the complainant has no other property out of which to meet said indebtedness except that above described; that the premises are subject to a vendor's lien in favor of Sina White and subject to the general taxes for the year 1930.

The bill then prays that an order be entered requiring the defendant, Sina White, to join with the complainant in the execution of a mortgage or trust deed to secure a loan of sufficient funds to meet the purposes above specified, and decree to the complainant and specific performance of the undertakings in said agreement.

The appellant, Sina White, filed her answer to the bill of complainant and thereafter upon the hearing of the cause the court entered a decree ordering the appellant to join with her husband in the execution of a mortgage or trust deed in accordance with the prayer of the bill. This appeal is prosecuted on the decree of the court.

The only question presented for review on the appeal is the validity and binding force of the contract herein set forth. It is true, as contended by the appellee, that "where a husband and wife are living separate and apart . . . an agreement between them, fairly and understandingly entered into, adjusting and settling their mutual rights in each other's property, may be lawfully made, and a provision in such contract under such circumstances that the husband will pay to the wife a certain sum each month for her support

is not void as against public policy.'' *VanKoten v. VanKoten,* 323 Ill. 323. But the contract in this case is of an entirely different character than the one passed upon in the case referred to. The contract entered into in this case is not fair to the appellant; nor was it understandingly entered into by her. The appellant testified concerning some of the features of the contract, as follows:

''I am the wife of Perry White. I separated from him in April, 1926. This contract was executed in September, 1926. At the time I was separated from Mr. White, we were living on this farm. Had lived on that farm eighteen years prior to that time—I mean this 107 acres that Mr. White inherited from his father. That was a portion of the 160 that we farmed at that time. At the time we separated one child was living at home. He was 15 years old at that time. I worked in the field and we put what money we made back on the farm. We raised the house, made a foundation, put in a furnace, put the fences on partly, and I helped dig out for the basement, and I helped mix the cement and laid it. That was all before I signed this contract. I recall the occasion when I signed this contract. Mr. Carson sent me word, and Clyde Mathews, that they had the contract ready. I went up, they read it over, and I refused to sign it, and Mr. Mathews said, 'Go ahead and sign it; it wont stand in court. If you feel like you are not satisfied with the $8.00, you can go ahead and sue and get separate maintenance for the boy.' . . . At the time of signing the contract, Mr. White owed me $650.00, besides some other, that I didn't keep account of, that I gave him at different times, off a little patch of land I had. We were married four years before I sold the land. He wanted to borrow the money and I loaned it to him, $650.00. That was the same $650.00 that was paid me on signing the contract. The household furniture listed in com-

plainant's Exhibit 1 all belonged to me. My mother came to live with us and when she left she left me some of this stuff and some she bought me when I was married. Outside of that, I bought silverware with my money which was given to me. What he and I bought together was left in the house—cook stove, and everything he sold at the sale. When he sold them I don't know who got the money."

From the appellant's testimony it appears that the $650 mentioned in the contract which the appellee paid her, he owed her; and the household goods and personal effects therein specified were the property of the appellant; and that the only money which he paid her for her maintenance and support was the $8 per week. There was no division of property mutually owned involved in the transaction. But the appellant in order to secure the $8 per week for her maintenance and support was asked to and did agree in the contract that the money which was due her and the household goods and effects which belonged to her should constitute the full settlement now and forever of all her claims and demands upon and against the property and estate of the appellee and of all claims and demands against the appellee, which she might thereafter have for maintenance, support, alimony, either temporary or permanent, and solicitor's fees, which might be involved in any future suit or proceedings, either in law or in chancery, which might thereafter be instituted by her against the appellee; and she further expressly covenanted and agreed in the contract that the contract should operate as a full, complete and final settlement, satisfaction, discharge and adjudication of any and all of her legal rights, claims or demands against the appellee for support, maintenance, alimony or solicitor's fees, or by way of widow's award, homestead, inheritance, dower or any other interest or money demand she might

otherwise than for this instrument assert against the property or estate of the appellee, without having been advised as to what her rights were, or might be, in her husband's estate, as his widow. And she also expressly covenanted and agreed in the instrument that if she should at any time thereafter prosecute or institute any action at law, suit in equity or other proceeding in any court whatsoever, claiming or demanding the property or estate of the other, or any part or portion thereof, or for alimony, or for solicitor's fees, that in such event, the contract might be pleaded and offered in evidence by the appellee in any such action, suit or proceeding, and that it should thereupon be and operate as a complete legal and equitable bar to the further prosecution or maintenance of such action, suit or proceeding, or to any claim or demand for alimony or for solicitor's fees. And the contract further provides that the contract shall have the full force and effect of a judgment and decree finally and permanently settling, determining and adjudicating, all the rights and obligations, interests and claims of the appellant against the appellee or against the property or estate of the appellee. And she also covenanted and agreed with the appellee that during their joint lives she would at any time, on request of the appellee, join him in the execution of any conveyance of any real estate of which he might be seized or to which he might be entitled in remainder, reversion, or otherwise, and make a formal release and relinquishment of her contingent right or interest in the real estate of the appellee. The effect of this contract, if it could be legally enforced, would be not only to deprive the appellant of solicitor's fees and alimony in the divorce suit which the bill alleges she instituted against the appellee, which proceeding is different in character and effect covering the rights and property interests of the respective parties thereto and different in effecting the

legal obligations of the appellee. Moreover, if the appellee should die which would end the obligation to pay her the $8 per week, having relinquished all her interests in his estate and property as heir and widow including the right which she would have under the law to a widow's award intended for her support during the first year after her husband's death, she might be bereft of any means of support and maintenance.

We conclude, therefore, that the contract is grossly unfair, inequitable and unjust and that the evidence shows that it was not understandingly entered into by the appellant. Morever, a contract between a husband and wife, one of the material provisions of which is that the husband shall be relieved of the obligations imposed upon him by law to support his wife, is illegal and void as against public policy. *Lyons v. Schanbacher,* 316 Ill. 569; *VanKoten v. VanKoten, supra.*

A contract which is intended to release the husband from payment of further support of his wife is invalid. *Shankland v. Shankland,* 301 Ill. 524; *French v. French,* 302 Ill. 152.

We are of opinion therefore that the contract in question is not enforceable in law or in equity and is void as against public policy. The decree is therefore reversed.

*Reversed.*