448

Herbert J. C. Henderson, Appellant, v. Hattie Distel Henderson, Appellee.

Gen. No. 39,052.

Opinion filed May 19, 1937.

449

NEWBY & BURDITT, of Chicago, for appellant.

TAYLOR, MILLER, BUSCH & BOYDEN, of Chicago, for appellee; ORVILLE J. TAYLOR and BERNARD K. SHAPIRO, of Chicago, of counsel.

MR. JUSTICE HEBEL delivered the opinion of the court.

The plaintiff appeals from a decree entered by the court dismissing the bill of complaint for want of equity upon motion of the defendant.

This action arose upon a contract entered into between the plaintiff and the defendant, which is in words as follows:

"Memorandum of Separation and Property Settlement Agreement made and entered into this 21st day of September, A. D. 1935, in the City of Chicago, County of Cook, State of Illinois, by and between Hattie Distel Henderson, party of the first part, hereinafter referred to as Wife, and Herbert J. C. Henderson, party of the second part, hereinafter referred to as Husband, both being residents of the city and state aforesaid, in manner following:

"Statement of Facts Agreed Upon by and Between the Parties.

"The parties to this agreement were married in the City of Windsor, Province of Ontario, in the year 1911, and have lived and cohabited together as husband and wife continuously since the date of said marriage until, to-wit: the month of August, 1935. That for a number of years after said marriage said parties cohabited together as husband and wife in the city of Detroit, Wayne County, state of Michigan; subsequently in Milwaukee, Wisconsin; thereafter again in Detroit, Michigan, for a period of years; that said parties have lived and cohabited together in the city of Chicago as husband and wife since March, 1934.

"That no children have been born of said marriage.

"That for several years immediately prior to March, 1934, said husband was a vice president of Fisher Body Corporation of Detroit in charge of advertising. That prior thereto said husband was sales manager of the Lincoln division of Ford Motor Company. That since March, 1934, and at the present said husband has been and is vice president of The American Weekly, a Hearst publication, and is employed at a salary of Fifty Thousand Dollars ($50,000.00) per year, less two cuts of ten per cent (10%) each which were made because of depressed business conditions.

"That since, to-wit: the fall of 1934 the marital relations between the parties have become gradually more and more strained and incompatible, said wife claiming that said husband's relations with another woman have been in violation of said husband's marriage vows and that said husband has been guilty of cruelty within the meaning of the Illinois statutes defining the same. That said husband, claiming that said wife, by the manner in which she conducts herself with reference to gossiping about said husband and with reference to her indisposition to cooperate with said husband in a social way to further the interests of said husband, has made a continuation of said marital relation impossible.

"That the aforesaid claims by the wife are denied by the said husband and the aforesaid claims made by said husband are denied by said wife.

"That since, to-wit: March, 1934, the parties have been residing at 1420 Lake Shore Drive in the city of Chicago. That the cost of the furniture provided by the husband for the apartment occupied by the parties at said address amounts to approximately Thirty Five Thousand Dollars ($35,000.00) and that the rent of said apartment amounts to the sum of Three Hundred Dollars ($300.00) per month.

"That said husband packed his personal belongings toward the end of August, 1935, and departed permanently from said apartment and took up an apartment of his own at another address in the city of Chicago. That said husband notified said wife upon said departure that he was then leaving said wife permanently.

"That said wife consulted with attorneys and was advised that she had good and sufficient grounds for divorce under the laws of the State of Illinois; that said wife was about to commence a divorce suit against said husband, having given directions to attorneys to institute the same, but before said suit was commenced a property settlement and separation was agreed upon between the parties as hereinafter set forth.

"That said wife, at her own election, without consideration of any kind, and of her own volition, has postponed the institution of said divorce action for such time as she sees fit, without restriction, and without waiving any of the grounds for divorce claimed by her, which she now hereby expressly reserves.

"That said husband in entering into this agreement has not waived any claimed grounds of divorce asserted by him and expressly reserves the same without restriction or limitation.

"That the irreconcilable differences which have arisen between the parties render it impossible for them to hereafter live together as husband and wife.

"The parties agree that it shall be lawful for the wife at all times hereafter to live separate and apart from the said husband, free from his marital control and authority as if she were sole and unmarried, and to reside from time to time at such place or places as she may elect without any interference, domination, or restriction whatever on the part of the said husband.

"It is agreed that neither of said parties shall molest the other in their daily living in their respective

spheres of life, nor compel or endeavor to compel the other to cohabit or dwell with him or her by any legal proceedings for restitution of conjugal rights.

"The husband makes the following provisions for the support of the wife: the husband gives, grants, bargains, sells and assigns all of his right, title, and interest in and to the personal property of every name and nature located in the apartment heretofore occupied by the parties at 1420 Lake Shore Drive, in said city, which property includes all furniture and furnishings in said apartment.

"On or before September 30, 1935, said husband will deliver to said wife the sum of One Thousand Dollars ($1,000.00) for her personal bank account. Said husband will pay said wife the sum of Six Hundred Dollars ($600) per month for the months of September, October, November and December, 1935. The September payment of six Hundred Dollars ($600) will be made upon the execution of this instrument and like payments of Six Hundred Dollars ($600.00) each month will be made upon the fifteenth day of the months of October, November, and December. Commencing January 1, 1936, and for the life of this instrument, which will remain permanently in force and effect, the said husband will pay the said wife the sum of Seven Hundred Fifty Dollars ($750.00) per month on the first day of each and every month from and after and commencing with January 1, 1936.

"In addition to the foregoing provisions the said husband is to deliver to said wife upon the execution of this instrument a life insurance policy in the principal sum of Fifty Thousand Dollars ($50,000.00) upon the life of said husband, with protection in the event of accident or sickness, in which said policy said wife shall be the irrevocable beneficiary; and said husband agrees to pay the premiums on said policy during the life of this agreement, so that in the event of death or

disability of said husband, said wife will receive the benefits of said insurance policy. All reserves in said policy shall belong to and accrue to said wife. The premiums to be paid on said policy shall not be deducted from any of the sums above set forth that said husband agrees to pay said wife for her support.

"Said wife agrees to the foregoing provisions for her support and protection.

"The aforesaid arrangement shall become effective as of the date of this instrument.

"Now, therefore, in consideration of the foregoing statement of facts agreed upon by and between the parties, their agreement to live permanently separate and apart from each other, and the provisions for the support and protection of the wife as hereinabove set forth.

"It Is Mutually Agreed by and between the parties that the foregoing statement of facts is hereby declared binding on each and both of them.

"That the parties hereto, having permanently separated, now agree that for the rest of their lives they will live separate and apart from each other, each free from the marital control and authority of the other as if each of the parties were single and unmarried and the parties agree that each of them may reside from time to time in such place or places as they may respectively select without any interference, domination, or restriction whatever on the part of each of the parties with respect to the other.

"It is agreed that neither of said parties shall molest the other in their daily living in their respective spheres of life, nor compel or endeavor to compel the other to cohabit or dwell with him or her by any legal proceedings for restitution of conjugal rights.

"Said husband promises to regularly and faithfully make the payments hereinabove proved to said wife for her support; to procure and deliver said insurance

policy as above provided and to pay the premiums therefor regularly; and said husband relinquishes all claims of every name and nature to the personal property in the said apartment heretofore occupied by the parties.

"Said wife accepts the foregoing promises and provisions made by said husband for her support and protection.

"In Witness Whereof the parties hereto have hereunto affixed their hands and seals in the city of Chicago, Cook County, state of Illinois, the day and year first above written.

> "Hattie Distel Henderson (L. S.)
> "Herbert J. C. Henderson (L. S.)"

The bill of complaint alleged that there was no consideration for the execution of said instrument for the reason that there was nothing of value passing from the defendant to the plaintiff, and that said instrument is therefore null and void.

It is further alleged that said instrument purports to be an agreement between the plaintiff and the defendant, whereby the plaintiff and the defendant agree that for the rest of their lives they will live separate and apart each from the other, each free from the marital control and authority of the other.

It is also alleged that said instrument purports to be an agreement between the plaintiff and defendant that neither shall molest the other in their daily lives in their respective spheres of life, or compel or endeavor to compel the other to cohabit or dwell with him or her by any legal proceedings for the restitution of conjugal rights; that said purported agreement is contrary to public policy and good morals, and that therefore said purported contract is wholly null and void.

That the defendant is in possession of the apartment formerly occupied by the plaintiff and defendant at

1420 Lake Shore Drive, Chicago, Cook county, Illinois, and of all of the personal property, effects, furniture, and equipment therein situated, purchased originally at a cost in excess of $35,000; that the defendant declined and refused to deliver to the plaintiff or to permit the plaintiff to take therefrom personal effects of the plaintiff consisting, among other things, of a diamond stud, 14-Karat gold pencil, portraits, books and other personal articles, notwithstanding that the plaintiff has paid to or for the account of the defendant, for her separate support and maintenance, since September 21, 1935, the sum of $5,594.93.

Count two of plaintiff's complaint alleges that heretofore, and on or about the 11th day of April, 1936, the defendant herein commenced a personal action, arising upon express contract in the circuit court of the county of Wayne, in the State of Michigan against this plaintiff, and filed in the office of the clerk of said court the affidavit of her agent and attorney, stating in said affidavit, among other things, that he has good reasons to believe and does believe that the parties named have property, money, goods, chattels, credits, and effects in their hands and under their custody and control, belonging to this plaintiff, and that the parties named are indebted to the plaintiff, and that the plaintiff is justly indebted to this defendant upon such contract in the sum of $2,400 over and above all legal set-offs; that she is justly apprehensive of the loss of the same unless a writ of garnishment issue to the aforesaid named parties to make disclosures in writing under oath to be filed with the clerk of the court, touching the liability of these named parties as garnishee of this plaintiff, the principal defendant in said action.

It is further alleged in the complaint that the plaintiff and the defendant are residents of the city of Chicago, county of Cook and State of Illinois, and that

said suit was brought by the defendant against the plaintiff in the State of Michigan, for the purpose of harassing and annoying the defendant; that in equity and good conscience the plaintiff should not be compelled to go into the State of Michigan to defend said suit.

Plaintiff prays that a decree may be entered by the court decreeing that the instrument dated September 21, 1935, executed by the plaintiff and the defendant be declared null and void and of no effect, and that the same be canceled, vacated and set aside; and further, that the defendant and her agents be enjoined and restrained from prosecuting the action brought by her against the plaintiff in the circuit court of Wayne county, in the State of Michigan.

It is urged by the plaintiff that the contract is contrary to public policy and therefore is void, and in support of this contention calls the attention of the court to what the Supreme Court said in the case of *VanKoten v. VanKoten*, 323 Ill. 323, where the court said: "Marriage is a civil contract to which there are three parties,—the husband, the wife and the State,—and it is regarded as a status based upon public necessity and controlled by law for the benefit of society at large."

A married woman may initiate an action under the provisions of section 1, ch. 68, ¶ 22, Cahill's Ill. Rev. Stats., 1933, which provides:

"That married women who, without their fault, now live or hereafter may live separate and apart from their husbands, may have their remedy in equity, in their own names respectively, against their said husbands in the Circuit Court of the county where the husband resides, for a reasonable support and maintenance while they so live or have so lived separate and apart; and in determining the amount to be allowed the court shall have reference to the condition in life

of the parties at the place of residence of the husband, and the circumstances of the respective cases; and the court at any time, after service of summons and proper notice to the husband, may make such allowance of temporary alimony, attorney's fees, and suit money as may appear just and equitable, as in cases of divorce; the court may, however, in its discretion, reserve the question of the allowance of attorney's fees and suit money until the final hearing of the case, and may then make such order with reference thereto as may seem just and equitable, regardless of the disposition of the case."

The plaintiff concedes that the foregoing section has been in conformity with the legal obligation imposed upon a husband by his marriage vows, to provide support for his wife during her natural life, and was in addition to the power of the court to grant alimony in a divorce action, as provided for in sections 15 and 18 of the Divorce Act, ch. 40, ¶¶ 16 and 19, Cahill's Ill. Rev. Stats. 1933.

The plaintiff further suggests that under the above mentioned sections, when a husband and wife find themselves unable to live together by reason of the fault of one or the other, they may enter into separation and property settlement agreements.

We agree with what was said by this court in an opinion filed in the case of *Boyd v. Boyd,* 188 Ill. App. 136, that is:

"Postnuptial contracts between husband and wife adjusting their interests in the property of each other, not made in contemplation of living separate and apart, when understandingly and voluntarily entered into are not contrary to public policy and are valid. But such contracts made in contemplation of the parties living separate and apart from each other, or where the element of separation enters into them, or

where the separation is an accomplished fact when the contract is made, and without it in all probability the contract would not have been made, are not looked upon with indulgence by the law, and while in some cases they will be enforced while the parties live in separation, yet in our opinion when the parties effect a reconciliation and resume their marital relations fully and completely, such contract is abrogated by the action of the parties themselves and ceases to have any force or effect, at least in so far as it attempts to relieve the husband from the maintenance and support of his wife and children.''

And then, again, upon this subject the Supreme Court in the case of *Shankland v. Shankland,* 301 Ill. 524, said:

''Where it is apparent that such a contract is entered into for the purpose of stimulating or inducing one party or the other to institute divorce proceedings, or that the same is for the purpose of purchasing a decree of separation, or amounts to collusion between the parties to secure a decree of divorce, such a contract ought to be, and is, deemed contrary to public policy and void.''

The contract in the instant case is material evidence of the intention and aims of the parties, containing as it does the provisions of the separation agreement, and the question arises whether from its contents it can be deemed contrary to public policy.

It appears from the contract signed by the parties that the husband, in August, 1934, removed his personal belongings and departed from the apartment occupied by the plaintiff and the defendant as husband and wife, and at that time the plaintiff informed his wife that he was then leaving her permanently; that by reason of plaintiff's leaving his wife the contract was entered into to provide for the support of his wife, the defendant.

The plaintiff states that the contract provided for a permanent separation and maintenance, and that the document stripped of all verbiage plainly undermines and destroys the basic principles of marital relationship. Marriage, the union and cohabitation of one man and one woman, so long as they shall both live, is a sacred obligation which, during that time, the parties cannot of their own volition and act dissolve, but which can be dissolved only by authority of the State.

From an examination of this contract, the plaintiff when he declared that he was permanently leaving his wife was guilty by his own words over his signature of a violation of his marriage vows.

The agreement provides for the payment of money for the support of plaintiff's wife during the life of the agreement, to which provision, and others, the plaintiff points as vicious and contrary to public policy. With this view we cannot agree. The words used in the contract would indicate that by its terms it is limited, and this is further demonstrated by the words providing for the support of the wife and that the same is to be permanent, that is the amount to be paid is fixed for the life of the instrument. These very words were again used in the provision where the plaintiff is to deliver to the defendant wife a $50,000 life insurance policy, naming her as an irrevocable beneficiary, the plaintiff to pay the premiums during the life of this agreement so that in event of plaintiff's death the wife will receive the benefits of this policy. The statement "life of the agreement" surely does not indicate that it is to endure for the life of the parties, notwithstanding plaintiff's claim that the document provides for permanent separation. It is indicated that the contract may be at an end either by a reconciliation of the parties, or by such acts of the parties themselves as will terminate this agreement. This means that the door is still open to the parties to resume their marital ties.

The agreement does recite that the parties thereto "agree that for the rest of their lives they will live separate and apart from each other." We reiterate that it was but the will of the plaintiff which moved the parties to use this language when plaintiff left his wife and stated "that he was leaving (his wife), permanently."

In the case of *VanKoten v. VanKoten,* 323 Ill. 323, the court upon agreements of this character said: "Agreements between husband and wife for a separation are not *per se* illegal or invalid, but where a husband and wife are living separate and apart, or where the circumstances are such that they can no longer congenially live together with the mutual confidence and implicit faith in each other which the sanctity of the marriage relation demands, or where the relations between them are such as to render the separation necessary for the health or happiness of one or the other of them, an agreement between them, fairly and understandingly entered into, adjusting and settling their mutual rights in each other's property, may be lawfully made. (*Lyons v. Schanbacher,* 316 Ill. 569), and a provision in such contract under such circumstances that the husband will pay to the wife a certain sum each month for her support is not void as against public policy. *French v. French,* 302 Ill. 152."

In *Lyman v. Lyman,* 268 Ill. App. 274, the facts are somewhat like the facts in the case at bar. In the *Lyman* case a separation agreement was entered into on July 14, 1925. At the time of the agreement the husband and wife were living separate and apart. The agreement provided: ". . . that upon the signing of the agreement neither shall molest or disturb the other, and their manner of living shall not be ground for legal action on the part of either. . . . The separation agreement itself was valid and not contrary to public policy. It was entered into according to its terms after the

parties had separated and were living apart. It contained a provision under which the husband was obligated to support the wife and the courts have recognized the right of a husband and wife to enter into an agreement to live separate and apart, provided provision is made for the wife's support in the agreement. *Galusha v. Galusha,* 116 N. Y. 635; *Hirschthal v. Hirschthal,* 134 N. Y. Misc. 479; *French v. French,* 302 Ill. 152; *Patterson v. Patterson,* 111 Ill. App. 342; *VanKoten v. VanKoten,* 323 Ill. 323.''

Then again in the case of *Shankland v. Shankland,* 301 Ill. 524, we quote from the opinion of the Supreme Court as follows: ''In Bishop on Marriage, Divorce and Separation (vol. 1, sec. 1278) it is stated as the law that where a separation has already taken place between husband and wife, or it is in agitation and immediately follows, a provision for the wife's support, (separate maintenance,) if on an adequate consideration, will be enforceable, but will not if made during cohabitation and no separation ensues. It was held by this court in *Ross v. Ross,* 69 Ill. 569, that where a husband is living separate and apart from his wife by consent, or if he acquiesces in her leaving him, he is liable for her necessary support. In *Phillips v. Meyers,* 82 Ill. 67, it was held that where a husband is under legal obligation to support his wife, an agreement on his part to pay money to a trustee for her use, without any promise or agreement on her part, is founded on a sufficient consideration and binding on him and enforceable at law.''

Counsel for the plaintiff contends that there was no consideration which moved the parties to execute the instrument in question. The courts have held that in agreements of the kind in this case which provide for the payment of money by the husband in support of his wife, the duty of the husband to support his wife forms sufficient consideration for the execution of a sepa-

462

ration agreement. *Phillips v. Meyers,* 82 Ill. 67; *Patterson v. Patterson,* 111 Ill. App. 342; *Shankland v. Shankland,* 301 Ill. 524.

It has been called to the attention of this court by the plaintiff that no relief will be granted to either party to an illegal contract; that the contract entered into to live permanently separate and apart is against public policy. The recent case of *Vock v. Vock,* 365 Ill. 432, is cited, wherein the Supreme Court in its opinion said: "The contract shows that the parties separated by mutual consent, which implies they were equally at fault. The law is that where the parties are *in pari delicto* no affirmative relief of any kind will be given to one against the other. The only equitable remedy which they can obtain is such as is purely defensive. If a contract is illegal affirmative relief against it will not be granted unless the contract remains executory, or unless the parties are considered not in equal fault, as where the law violated is intended for the coercion of the one party and the protection of the other, or where there has been fraud or oppression on the part of the defendant."

In the instant case we find from the statement of facts contained in the agreement that the plaintiff removed his belongings and departed permanently from the apartment and took an apartment of his own at another address in the city of Chicago, and, as we have stated in this opinion, as a result of that act this agreement was entered into. When plaintiff made the statement he was leaving permanently, he did so for the purpose of bringing about the contract of which he now complains.

It would seem from the facts contained in the contract that the court did not err when it entered its decree dismissing the bill of complaint upon defendant's motion for want of equity.

It is further contended that the agreement is in violation of the statutes of the State of Illinois (ch. 68, ¶ 22, Cahill's Ill. Rev. St. 1935; Jones Ill. Stats. Ann. 109.189) for the reason that prior to July, 1935, there was an obligation upon a husband to support his wife during marriage whether with or without children and whether they lived together or separate and apart without fault on her part. This act was amended by adding the following clauses:

"Provided that there are no living children born of such marriage no person having once received separate maintenance or temporary alimony for a period of two (2) years or a fraction thereof shall be entitled to further separate maintenance or temporary alimony against the same spouse, except for such portion of the two (2) years as remains unexpired. Provided also, that there are no living children born of such marriage the time during which the husband or wife is living separate and apart from the other spouse, under a decree of separate maintenance, shall be, for the purpose of divorce, regarded as desertion by the husband or wife."

It will not be necessary to consider the contention of the plaintiff that in the instant case this statute is controlling, for the reason that in the case of *DeMotte v. DeMotte*, 364 Ill. 421, the Supreme Court has held that the amendment of 1935 to the Separate Maintenance Act is invalid.

The question of the right of the defendant to maintain an action in the circuit court of Wayne county, Michigan, against the plaintiff has not been considered by this court, as in this case the argument of the plaintiff was based on the contention that the contract is contrary to public policy and therefore null and void and in violation of the statutes of this State, and for the further reason that no doubt the Michigan court

will pass upon the merits of the controversy when the matter is properly presented.

For the reasons stated we are of the opinion that the court was justified in entering a decree dismissing the plaintiff's bill for want of equity. Therefore, the decree is affirmed.

*Decree affirmed.*

DENIS E. SULLIVAN, P. J., and HALL, J., concur.