MARY J. HAMILTON

*v.*

SAMUEL HAMILTON.

1. MARRIED WOMEN—*power to contract with husband.* Since the act of March 30, 1874, relating to married women, took effect, a wife may make contracts with her husband for lawful purposes, except so far as is otherwise provided in the act itself, and they may be enforced.

2. CONTRACT—*when against public policy.* A contract between husband and wife, pending a suit by the latter for a divorce, by which the husband agrees to convey certain land to the wife and pay her $500, and she to unite with him in conveying his other real estate to a third person, released from all claim of dower and homestead on her part, though the husband does not expressly agree not to resist the suit for divorce, is contrary to public policy and invalid, as tending to open a door for the attainment of divorces by collusion.

WRIT OF ERROR to the Circuit Court of Franklin county; the Hon. MONROE C. CRAWFORD, Judge, presiding.

Plaintiff was the wife of defendant, and had instituted in the circuit court a suit against him for a divorce, (upon a charge of adultery) and for alimony. Pending this suit, on the 15th of August, 1876, they agreed, in writing, signed by

both, (among other things,) that defendant, (the then husband) would give to plaintiff, (the then wife) a certain farm, (described); and that he would pay her, further, the sum of $500, (in a mode specified,) the farm to be conveyed by them both to John W. Williams and by Williams to plaintiff. And in consideration of the foregoing, plaintiff agreed to unite with defendant in the conveyance of all of defendant's other real estate (waiving her homestead and dower rights,) to Wm. C. Sadler; and she further agreed to dissolve an injunction (then in force against the defendant in the divorce suit); and she further agreed to dismiss her claim for alimony in that suit.

This is an action of assumpsit, by plaintiff against defendant, for a breach of that agreement. The declaration sets out this agreement, and alleges, by apt specifications, that she complied in every respect with the terms of this contract; that at the October term, 1876, she prosecuted to final decree her divorce suit, and was thereby divorced for the cause alleged, and that she made no claim for alimony; that the farm was conveyed to her as agreed, and that $150 (of the $500) was paid by him to her (in pursuance of the agreement and prior to the decree of divorce,) and that defendant, since the divorce, refused to pay the balance of the $500, after proper demand, etc.

To this declaration the circuit court sustained a demurrer, and gave judgment in bar and for costs against plaintiff, and she appeals to the Supreme Court.

Mr. F. M. YOUNGBLOOD, for the plaintiff in error.

Mr. THOMAS J. LAYMAN, for the defendant in error.

Per CURIAM: The question chiefly discussed in this case is that of the capacity of plaintiff, at the time of the contract, to contract with her husband.

This statute of March 30, 1874, (R. S. 576,) goes much further in abolishing disabilities arising from coverture, than any former statute. By it a wife may sue and be sued as if unmarried; an attachment or judgment may be enforced against

her as if she were unmarried; she may defend in her own right when sued with her husband; " contracts may be made and liabilities incurred by a wife * * * as if she were unmarried," except contracts of partnership; she may own in her own right real and personal property obtained by gift, descent or *purchase*, and may convey the same as may the husband property belonging to him.

There is nothing in all this which forbids her to contract with her husband, and the words are *general* and broad enough to sanction such contracts. Not only so, but it is provided in section 9 of the act, that where husband and wife shall be living together no transfer of goods between them shall be valid *as against* the rights of *third persons*, unless in writing, duly acknowledged and recorded. This provision necessarily implies that the former broad language of the statute was used in a sense to authorize contracts between husband and wife, and make them effective in all cases for lawful purposes, except in so far as otherwise provided by the act itself. We find nothing in the act limiting her capacity to contract in this regard.

The majority of the court, however, are of opinion that the contract set out in the declaration is, in its essence and character, against public policy, and that it must be held invalid upon that ground. While divorces are authorized by law, they ought not to be encouraged. In this contract there is no express agreement that the husband would not resist the application for a divorce, or that he would consent to a divorce, still, it is thought that to permit such a contract as this to be enforced in the courts, would open a door for the attainment of divorces by collusion, and upon this ground the decision of the court in sustaining the demurrer to the declaration ought to be sustained.

*Judgment affirmed.*


Mr. JUSTICE DICKEY: I concur in the ruling that the wife has full power to contract with her husband, subject only to the

limitations in the statute. I do not, however, think that we have any warrant for declaring this contract void. It may be, that such a contract may be used to carry out collusion between the parties, and in such case, if the contract should be held void on that account, the alleged collusion ought to be pleaded and proven. There is no allegation of unlawful collusion in this case, and I think it is not to be presumed. If security against collusion demands that such contracts as this should be held void, it is for the legislature to so provide by statute. The statute has no such provision, and I think the court has no power to legislate upon this question.

Mr. JUSTICE SCHOLFIELD: I concur in the conclusion reached in this case.

Mr. JUSTICE SCOTT: I do not concur in the opinion of the majority of the court.

Mr. JUSTICE CRAIG: I concur in affirming the judgment.