(No. 13654.—Decree affirmed.)

RUBY M. PATTERSON, Appellant, vs. C. V. McCLENATHAN, Trustee, et al. Appellees.

*Opinion filed February 15, 1921.*

1. DEEDS—*description must be such that property can be identified.* Where a grantor makes a deed to a grantee without valuable consideration and a mistake is made in the description of the property so that the property cannot be identified or located, a court of equity will not lend its aid to make the gift effective by correcting the mistake.

2. SAME—*description is sufficient if it furnishes the means of identifying the property by aid of extrinsic evidence.* The purpose of a description of the land conveyed in a deed is either to identify the land or to furnish the means of identification, and a deed will not be declared void for uncertainty if it is possible, by any reasonable rule of construction, to ascertain from the description, aided by extrinsic evidence, what property is conveyed.

3. SAME—*when a deed must be held to have been delivered.* Where a grantor has been advised by an attorney just what is meant by delivery of a deed, and, pursuant to this advice, hands the deed to the grantee with directions to have it recorded, it must be held, in the absence of evidence to the contrary, that the deed was effectively delivered.

4. SAME—*delivered deed is not void because made in lieu of a will.* If a quit-claim deed reserving a life estate in the grantor and directing the grantee to distribute the property at the grantor's death, as directed in a separate trust agreement, is delivered to the grantee in the grantor's lifetime, it is not void because the deed and trust agreement were made in lieu of a will, to prevent the grantor's property from going to her husband or his heirs.

5. SAME—*subsequent control of premises by grantor will not overcome positive evidence of delivery of deed.* The fact that a grantor in a deed made in lieu of a will exercised full control over the premises during the time intervening between the execution of the deed and her death will not overcome positive evidence of the delivery of the deed, particularly where the deed reserved her a life estate.

APPEAL from the Circuit Court of Vermilion county; the Hon. WALTER BREWER, Judge, presiding.

LAWRENCE T. ALLEN, O. M. JONES, SWALLOW & BOOK-
WALTER, CHARLES TROUP, and DYER & DYER, for appellant.

ACTON & ACTON, for appellees.

Mr. JUSTICE THOMPSON delivered the opinion of the
court:

Prior to April 25, 1919, David G. McMillin and Min-
nie L. McMillin were husband and wife, residing together
in Danville, Illinois. No children had ever been born to
them. April 25, 1919, Minnie L. McMillin died intestate,
leaving her surviving as her heirs-at-law, David G. Mc-
Millin, her husband, a sister, a brother, two nieces and a
nephew. May 12, 1919, David G. McMillin died intestate,
leaving him surviving as his heirs-at-law, three sisters, a
brother and several nieces and nephews. Prior to her death
Minnie L. McMillin had been the owner in fee simple of
three tracts of land in Vermilion county. Tract No. 1 con-
sists of 23.93 acres described by metes and bounds and lo-
cated in the northeast quarter of section 1, township 18,
north, range 13, west of the second principal meridian.
Tract No. 2 is a small piece of land described by metes
and bounds, lying in the same quarter section, between tract
No. 1 and the right of way of the Wabash railroad; and
tract No. 3 is described as lot 5 in the subdivision of the
estate of Melvina E. Davis, situated in parts of section 36,
township 19, north, range 13, west of the second principal
meridian, of section 1, township 18, north, range 13, west
of the second principal meridian, and of section 6, town-
ship 18, north, range 12, west of the second principal me-
ridian. August 2, 1917, Minnie L. McMillin executed a
quit-claim deed and a trust agreement, in which C. V. Mc-
Clenathan was named grantee and trustee, respectively. In
the deed, for the consideration of one dollar and other
valuable consideration, she conveyed and quit-claimed to

McClenathan "all interest that I have or now own in section number one (1), township eighteen (18), north, range thirteen (13), west of the second (2d) P. M., and in section number thirty-six (36), township nineteen (19), north, range thirteen (13), west of the second (2d) P. M., and in section number thirty (30), township nineteen (19), north, range twelve (12), west of the second (2d) P. M., situated in the county of Vermilion and State of Illinois." In the trust agreement the land is described as it is in the deed. The trust agreement recites that Minnie L. McMillin "has by her deed bearing even date herewith, for the consideration of one dollar, granted and conveyed to me all interest which she this day owned" in the premises described. It provides that she shall be entitled to all the income, use, rents, profits and benefits to be derived from the property during her lifetime, and that after her death it shall be divided in accordance with the several provisions of the trust agreement.

The testimony showed that Mrs. McMillin had long entertained the desire to arrange her individual property so that none of it would in any event descend to her husband's heirs. Her husband had been an invalid for many years and received the constant care of a male attendant. He was the owner of farm lands, and, so far as this record shows, was not dependent upon his wife's property for support. She consulted McClenathan, cashier of the bank where she transacted her business, and asked him to make some arrangement by which she might dispose of her property so that it would not finally reach her husband's heirs. McClenathan consulted Walter T. Gunn, an attorney of Danville. Gunn looked into the matter and advised McClenathan and Mrs. McMillin that she could not accomplish her purpose by will, because if her husband survived her he would have the right to renounce under the will and take under the provisions of the statute. Gunn suggested the plan of conveying the real estate to a trustee, and pur-

suant to his suggestion the deed and trust agreement were drawn and delivered to Mrs. McMillin. It appears that she kept them for five or six weeks before she executed them and delivered them to McClenathan for safekeeping. The instruments were kept in a safety deposit box at the bank of which McClenathan was cashier. This box was leased to Mrs. McMillin and contained other of her private papers. A short time before her death Mrs. McMillin sent for McClenathan and asked him to bring to her the papers, so that she might read them over again and see just what disposition she had made of her property. After she had read them and expressed her satisfaction with their contents she re-delivered them to McClenathan. He conferred with Gunn regarding the validity of these instruments, and Gunn advised him that in case of contest by the heirs McClenathan would not be a competent witness to prove delivery of the deed, and that it might be well to have the deed re-delivered in the presence of witnesses. Following this suggestion, McClenathan, Gunn and one Brittingham went to the bedside of Mrs. McMillin at the St. Elizabeth Hospital, in Danville, and explained to her the situation regarding the delivery of this instrument. Gunn had previously told Mrs. McMillin that the deed must be delivered and the property passed out of her control during her lifetime in order to make the deed effective. Mrs. McMillin, in the presence of Gunn, Brittingham and Dr. Ross, handed the deed to McClenathan, stating she wanted him to have it recorded. She then handed a sealed envelope, which contained the trust agreement, to Dr. Ross, stating, "If anything happens to me you will know what to do with it." Mrs. McMillin was operated on the day following this transaction and she died about one week later. May 1, 1919, McClenathan was appointed administrator of her estate, her husband being incompetent and under the control of a conservator. Dr. Ross produced the envelope containing the trust agreement in the probate court, and it

was stamped filed at the time the petition for the appointment of an administrator was filed. McClenathan then took the deed and trust agreement to the recorder's office. On May 1, 1919, the deed was filed at 2:30 P. M. and the trust agreement was filed immediately afterwards.

Twenty-two of the heirs-at-law of David G. and Minnie L. McMillin filed their bill in the circuit court of Vermilion county, alleging that the deed and trust agreement were insufficient to pass title and that the property descended, under the statute, to the heirs-at-law of the Mc-Millins. The evidence was taken, by agreement of the parties, before a commissioner and said evidence was reported by him to the court. On a hearing of the cause the chancellor found the instruments to be valid instruments of conveyance and that they were properly delivered, and entered a decree dismissing the bill for want of equity. The complainants in the bill jointly and severally prayed an appeal, and the same was allowed upon their executing a bond to be filed and approved within thirty days and upon their filing a certificate of evidence within sixty days. The appeal bond of Ruby M. Patterson, appellant, was filed and approved July 12, 1920, and a certificate of evidence was filed July 26, 1920. None of the other complainants perfected their appeal.

Appellant has assigned many errors, but she urges that the decree should be reversed, first, because the description in said deed is so indefinite and uncertain that the property cannot be identified, and that such defective description can not be aided or corrected by parol proof because the conveyance was made without valuable consideration; and second, because said deed and trust agreement were never delivered in the manner required by law, and they amount to an attempted testamentary disposition of property without complying with the requirements of the Statute of Wills.

The law is well established that where a grantor makes a deed to a grantee without valuable consideration and a

mistake is made in the description of the property so that the property cannot be identified or located, then a court of equity will not lend its aid to make the gift effective by correcting the mistake. ° (*Strayer* v. *Dickerson,* 205 Ill. 257; *Henry* v. *Henry,* 215 id. 205; *Finch* v. *Green,* 225 id. 304; *Legate* v. *Legate,* 249 id. 359.) The sole purpose of a description of land as contained in a deed of conveyance being to identify the subject matter of the grant, a deed will not be declared void for uncertainty if it is possible, by any reasonable rule of construction, to ascertain from the description, aided by extrinsic evidence, what property it is intended to convey. (8 R. C. L. 1074; *Colcord* v. *Alexander,* 67 Ill. 581; *Smith* v. *Crawford,* 81 id. 296; *Koelling* v. *People,* 196 id. 353.) In *Prettyman* v. *Walston,* 34 Ill. 175, the description was, "to all lots and parts of lots in the city of Pekin," and the court held that the description was sufficient because proof might be made of what passed by the general description in the deed. In *Holbrook* v. *Forsythe,* 112 Ill. 306, the description was, "all the real estate and lands to me belonging and being in the State of Illinois," and it was held to be sufficient. The main object of the description of land sold and conveyed in a deed of conveyance is not, in and of itself, to identify the land sold but to furnish the means of identification. Very few descriptions in an instrument of conveyance would be sufficient to locate the land intended to be conveyed without the aid of extrinsic evidence. When the deed furnishes the means by which land may be identified and located it is sufficient. (Tiffany on Real Prop.—2d ed.—1646; *Harper* v. *Wallerstein,* (Va.) L. R. A. 1918C, 517; *Colcord* v. *Alexander, supra.*) There was no mistake in the deed of Mrs. McMillin and it was not necessary for the court to reform or correct the deed. The description in the deed makes it clear what land was intended to be conveyed by it and furnishes the means for identifying the particular land conveyed. In such a case the maxim, "That will be

considered certain which can be made certain," applies. This deed is not void for uncertainty.

The second objection is met by an examination of the evidence hereinbefore recited. It is uncontradicted that Mrs. McMillin desired to so dispose of her property that none of it would eventually reach her husband's relatives. In order to accomplish this she had to deprive her husband of his rights as her heir, but this she had a legal right to do. (*Blankenship* v. *Hall,* 233 Ill. 116; *Deke* v. *Huenkemeier,* 260 id. 131.) In order to be certain that her plan was properly carried out she consulted an attorney, who explained to her that the object could not be accomplished by will but that she could effect the result she desired by executing and delivering a deed to a trustee who would agree to carry out her plan. Where a grantor has been advised by an attorney just what is meant by delivery of a deed, and the grantor, pursuant to this advice, hands the deed to the grantee with directions to have it recorded, it must be held, in the absence of evidence to the contrary, that the deed was effectively delivered. (*Moore* v. *Downing,* 289 Ill. 612.) Where a deed is found in the possession of the grantee there is a presumption that it has been delivered; (*Tunison* v. *Chamblin,* 88 Ill. 378; *Inman* v. *Swearingen,* 198 id. 437; *Potter* v. *Barringer,* 236 id. 224; *Schroeder* v. *Smith,* 249 id. 574;) and this is especially true where the deed reserves a life estate to the grantor. *Riegel* v. *Riegel,* 243 Ill. 626; *Prince* v. *Prince,* 258 id. 304; *Sellers* v. *Rike,* 292 id. 468; *Young* v. *Payne,* 283 id. 649.

Appellant relies on our holding in *Oswald* v. *Caldwell,* 225 Ill. 224, as authority for holding this deed and trust agreement void as an attempted testamentary disposition of grantor's property. The law is well settled, as declared in that opinion, that if the intended disposition of property is of a testamentary character and not to take effect in the testator's lifetime but is ambulatory until his death, such disposition is not operative unless it be declared in writing

296—31

in strict conformity with the statutory enactments regulating the making of wills. It was further held in that case that if title to the property intended to be conveyed vested in the grantee during the grantor's lifetime, a valid trust to be executed after the grantor's death might be created by making a deed absolute in form and specifying the purposes of the trust in a separate instrument. Because this deed was made in lieu of a will does not render it a testamentary instrument. As a matter of fact, most deeds of trust by which a trust is created to continue after the death of the grantor are made to avoid the making of a further disposition of the property involved, and therefore accomplish the same object that might be accomplished by a will. If the instrument contains all the requisites necessary to constitute a valid conveyance of real estate under our statute, and is executed, acknowledged and delivered as required by law, it is sufficient to convey the property described therein. (*Young* v. *Payne, supra; Kelly* v. *Parker,* 181 Ill. 49; *Linn* v. *Campbell,* 289 id. 347.) The fact that the time when the beneficiaries under the trust agreement were to come into the actual enjoyment and possession of the land was postponed until after the death of the grantor would not make the deed testamentary in character. (*Bullard* v. *Suedmeier,* 291 Ill. 400.) The fact that the grantor exercised full control over the premises conveyed during the time intervening between the execution of this deed and her death will not overcome the positive evidence of delivery appearing in this record. *Moore* v. *Downing, supra.*

The circuit court properly found that appellant had no interest in the property conveyed by this deed, and its decree dismissing the bill for want of equity is affirmed.

*Decree affirmed.*