Emma L. Morrissey, Appellee, v. Raymond L. Morrissey, Appellant.

Gen. No. 40,346.

 Opinion filed February 27, 1939.

RATHJE, HINCKLEY, BARNARD & KULP, of Chicago, for appellant.

WM. L. QUINLAN, of Chicago, for appellee.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

On April 13, 1938, plaintiff filed, in the municipal court of Chicago, her amended statement of claim wherein she set out that in a certain written contract dated May 21, 1936, defendant, among other things, agreed to pay plaintiff the sum of $87.50 each month in instalments of $43.75 on the 1st and 15th of each and every month thereafter during the natural life of plaintiff, or, in the event of a decree of divorce, until the death or remarriage of plaintiff; that in the event defendant should default in making any of the payments and such default should continue for a period of 10 days, defendant would pay plaintiff all necessary expenses, including reasonable attorneys' fees, incurred by plaintiff in enforcing the terms of said agreement; that defendant failed to make semimonthly payments

which became due April 15, 1937, up to and including
June 15, 1937, or a total of $218.75; that a reasonable
attorney's fee for bringing said suit and collecting said
amount was $50, making a total sum of $268.75 due
plaintiff. The agreement attached to the amended
statement of claim contains a preamble reciting that
the parties were married on March 16, 1923, and were
then living separate and apart; that he had filed his
complaint for divorce and for a settlement of their
property rights; that she had filed an answer and a
counterclaim for divorce on the ground of cruelty and
for a settlement of property rights, and for alimony
and solicitors' fees; that the parties desire to settle
and adjust their respective property rights and claims;
that each made a full and complete disclosure to the
other of his or her respective properties, investments
and financial condition, and the agreement provided
that in consideration of one dollar and of mutual cove-
nants and agreements therein contained she was de-
clared to be the sole owner, free and clear of any claims
of any kind whatsoever of her husband, of certain real
estate, known as No. 6049 North Kilbourn avenue, Chi-
cago; that he would join in a conveyance of the prop-
erty to her; that she was the sole owner of the furniture
and other personal property located in No. 6049 North
Kilbourn avenue, Chicago, excepting only his personal
wearing apparel and tools; that she was declared to be
the sole owner of a certain automobile; that he agreed
to indorse to her the certificate of title to the automo-
bile; that he agreed to pay, upon demand, a balance of
$600 remaining unpaid on the purchase of a fur coat
then ready for delivery to her; that he agreed to pay
her the sum of $87.50 per month for her support and
maintenance during her natural life, or in the event a
decree of divorce be granted to either of the parties,
until her death or remarriage; that he agreed to pay
her for her attorneys' fees in the divorce action the

sum of $250; that each accepted the agreement as in full discharge of all claims of every character by each against the other. Defendant filed an affidavit of defense reading:

"Now comes the defendant, Raymond L. Morrissey, by Joseph J. Sullivan, his attorney, and in answer to the amended statement of claim of the plaintiff, Emma L. Morrissey, filed herein, represents that on, to-wit, May 26, 1936, he and the plaintiff executed and delivered to each other, in duplicate, a contract described in the amended statement of claim, a copy of which is thereto attached, and admits that he has failed and refused to make the semi-monthly payments provided to be made thereunder on April 15, 1937, and thereafter up to and including June 15, 1937, but denies that there is due and owing to plaintiff under the provisions of said agreement the sum of $218.75, or any other sum, together with attorney's fees, for the reason that the said agreement is illegal, void against public policy, and unenforcible, all as hereinafter more fully set forth.

"And in further answer to the said amended statement of claim, this defendant alleges:

"1. That on, to-wit, March 22, 1936, this defendant, Raymond L. Morrissey, and the plaintiff, Emma L. Morrissey, were married to each other, and that by reason of domestic altercations this defendant was, on the aforesaid date, obliged to leave the family home and did thereafter live separate and apart from the said plaintiff and has continued so to do.

"2. That on, to-wit, April 4, 1936, this defendant, as plaintiff, filed in the Superior Court of Cook County, Illinois, his complaint for divorce alleging, among other things:

"(a) That on or about the year 1909 the plaintiff herein married one Henry L. Hass, and that said Henry L. Hass died in the year 1922 leaving him surviving as his widow the plaintiff herein;

"(b) That on, to-wit, March 16, 1923, this defendant became and was lawfully married to the plaintiff herein, with whom he resided as her husband until March 22, 1936, at which date he was compelled to leave and to cease living with her as a consequence of her ill-treatment, consisting of extreme and repeated acts of cruelty; which said proceeding was entitled 'Raymond L. Morrissey vs. Emma L. Morrissey,' Superior Court of Cook County Case No. 36S4662;

"3. That on, to-wit, May 21, 1936, the said Emma L. Morrissey filed to said complaint her answer and counterclaim denying the allegations of this defendant's complaint and charging this defendant with various acts of cruelty, which said charges this defendant denied in his answer to said counterclaim, which said answer was filed in said proceeding on May 26, 1936.

"4. That on, to-wit, May 21, 1936, the plaintiff herein, Emma L. Morrissey, through her attorney, advised this defendant that he might be divorced from her upon the following terms and conditions, to-wit:

"(a) That he, this defendant, would not defend or contest the aforesaid divorce proceeding and would allow said proceeding to be heard as a default case and would allow the plaintiff to secure a decree of divorce upon grounds of cruelty, and would consent to the dismissal of his said complaint for divorce;

"(b) That he would pay the plaintiff the sum of $600, being the balance remaining unpaid upon a fur coat purchased by the plaintiff;

"(c) That he would pay to the plaintiff, in addition thereto, the sum of $250 as and for her attorney's fees;

"(d) That he would release any interest he had in certain securities then in the possession of the plaintiff, having an approximate value of $12,000;

"(e) That he would release all interest in the family home which was purchased and erected at a cost

of approximately $16,000, which said release was to include all furniture and furnishings located on said premises;

"(f) That he would release all interest he had in the family car and would assign the certificate of title thereto to the plaintiff;

"(g) That he would, in addition thereto, pay to the plaintiff the sum of $87.50 in equal semi-monthly payments of $43.75 each, until plaintiff's death or remarriage, all as alleged in the statement of claim filed herein;

"(h) That in consideration of the foregoing the plaintiff herein would release this defendant from any and all claims for alimony, separate maintenance, and from his legal obligation to support her; that she would immediately proceed with said divorce proceeding as a default case and would secure the entry of a decree of divorce dissolving the marital relationship and discharging each from their respective marital duties and obligations.

"5. That this defendant accepted said proposal, as aforesaid, and did on, to-wit, May 26, 1936, execute the said agreement dated May 21, 1936, providing, among other things, for:

"(a) The payment of $600, as aforesaid;

"(b) The payment of $250 as plaintiff's attorney's fees, as aforesaid;

"(c) The release of his interest in the family home and the furniture, furnishings, equipment and personal property located on said premises;

"(d) The release of his interest in the family automobile;

"(e) The assumption of the obligation to pay to plaintiff the sum of $87.50 in equal semi-monthly payments, as aforesaid, until her death or remarriage;

"(f) The release by the plaintiff herein of any and all claims for alimony, support and separate maintenance.

"6. That thereupon the plaintiff, in accordance with said agreement, proceeded with said divorce proceeding as a default, uncontested case, and on, to-wit, June 1, 1936, secured the entry of a decree of divorce completely dissolving their marital relationship.

"7. This defendant further alleges that by reason of the above and foregoing underlying agreement by and between the plaintiff and this defendant providing for the entry of an uncontested divorce decree in favor of the plaintiff and against the defendant and the consent of the defendant thereto, the said agreement dated May 21, 1936, is illegal, void as against public policy and therefore unenforcible.

"8. This defendant further alleges that by reason of the fact that the consideration for the execution and delivery of the said agreement dated May 21, 1936, was the plaintiff's promise to secure a divorce and this defendant's promise not to contest the same and to consent to the entry of the said divorce decree, the said agreement dated May 21, 1936, is illegal, void as against public policy and therefore unenforcible.

"9. This defendant further alleges that the provision of the said agreement releasing this defendant from his legal obligation to support the plaintiff is void as against public policy, invalidates the said agreement dated May 21, 1936, and that the same is, therefore, illegal, void as against public policy, and unenforcible.

"Wherefore, this defendant prays judgment against plaintiff for his costs of suit herein." Thereupon plaintiff moved to strike the affidavit of defense. The motion was argued and the court struck the affidavit of defense and entered judgment against the defendant in the sum of $218.75.

This appeal was consolidated for hearing with the appeal in the case of *Morrissey v. Morrissey,* 299 Ill. App. 609 (Abst.).

The appeal brings before us the question as to whether the affidavit that was stricken states a good defense. The theory of defendant is:

"*First*. That if the essence of and the underlying consideration for a written agreement or even a portion of the consideration therefor, although not expressly stated therein, is the defendant's promise to desist from contesting the plaintiff's divorce action and to stand by and consent to the entry of a divorce decree, as though by default upon the dismissal of his original complaint for divorce, the agreement is void as against public policy and is, therefore, unenforcible.

"*Second*. That if a contract settling property rights and providing for payment in lieu of alimony is made in contemplation of and to facilitate and is conditioned upon the dissolution of the marital relationship, the agreement violates the public policy of this state and is, therefore, illegal and unenforcible." In support of his contention defendant cites *Hamilton v. Hamilton*, 89 Ill. 349. There the plaintiff had instituted a suit for divorce. While the suit was pending the parties entered into a written agreement providing that the then husband would give to plaintiff a certain farm and that he would pay her in addition the sum of $500. The plaintiff agreed to unite with defendant in the conveyance of all of defendant's other real estate (waiving her homestead and dower rights) to Wm. C. Sadler; and she further agreed to dissolve an injunction then in force against the defendant in the divorce suit and to dismiss her claim for alimony therein. She brought an action in assumpsit. The declaration set up the agreement and alleged that she complied with the contract; that she prosecuted to final decree her divorce suit and made no claim for alimony; that the farm was conveyed to her as agreed, plus $150 of the $500 that he agreed to pay, and that he refused to pay the balance, wherefore she prayed judgment for the

balance. The defendant demurred to the declaration and the court sustained the demurrer and gave judgment for costs against plaintiff. On appeal the Supreme Court said (p. 351):

"The majority of the court, however, are of opinion that the contract set out in the declaration is, in its essence and character, against public policy, and that it must be held invalid upon that ground. While divorces are authorized by law, they ought not to be encouraged. In this contract there is no express agreement that the husband would not resist the application for a divorce, or that he would consent to a divorce, still, it is thought that to permit such a contract as this to be enforced in the courts, would open a door for the attainment of divorces by collusion, and upon this ground the decision of the court in sustaining the demurrer to the declaration ought to be sustained." Two of the justices dissented. The severity of the rule announced in *Hamilton v. Hamilton, supra,* was somewhat relaxed in *Shankland v. Shankland,* 301 Ill. 524, where the court said (pp. 531–533): "There is, then, absolutely no reason why appellant ought not to recover the alimony provided for by this contract except the bare fact that the testimony shows that the contract was signed before the granting of the divorce. Had it been signed after the divorce decree was entered, or had it been confirmed by the decree of the court and its provisions made a part of the decree, there is no question but that the contract would have been a legal and enforceable contract. This whole record indicates that appellant is a high-class woman, and that is the estimation that appellee placed upon her himself in his contract. Through oversight or neglect of her attorney the contract was not made a part of the decree. We think that, inasmuch as she has performed this contract entirely upon her part, it would be a most inequitable thing for appellee to persist in not carrying out the remainder of the contract on his part. It is

entirely performed except as to the part not performed by him.

"We do not think this contract is void because made prior to the decree for divorce. There are some States that hold through their courts that a contract made between parties before a decree for divorce is granted, for alimony, is generally void, and in *Hamilton v. Hamilton*, 89 Ill. 349, this court held that a contract in some respects similar to this was void because it was thought that to permit such a contract as there recited to be enforced in the courts would open a door for the attainment of divorces by collusion. We do not think, however, that the contract in question ought to be considered as on a par with the one in the case above cited. . . . It will thus be seen that there are respectable authorities which hold that such a contract as the one entered into in this case is not necessarily void because it is entered into prior to and pending divorce proceedings. Where it is apparent that such a contract is entered into for the purpose of stimulating or inducing one party or the other to institute divorce proceedings, or that the same is for the purpose of purchasing a decree of separation, or amounts to collusion between the parties to secure a decree of divorce, such a contract ought to be, and is, deemed contrary to public policy and void." It is obvious that a written agreement between a husband and wife entered into for the purpose of stimulating a divorce is against public policy and void. Plaintiff, however, argues that the written agreement attached to the amended statement of claim does not show any illegal consideration and that the contract cannot be varied by any oral testimony as to preceding negotiations. The principle of law announced by plaintiff has no application to a situation such as is presented by the affidavit of defense in this case. It cannot logically be argued that where a contract is illegal or vicious, or contrary to

public policy, the nature of the contract cannot be shown even though the same does not appear in the written agreement. In *Henderson v. Palmer*, 71 Ill. 579, a note secured by a mortgage was given in consideration of a promise by the payee to discontinue a prosecution for a felony. The Supreme Court (pp. 582, 583) said:

"The rule is fully recognized, that when a contract grows immediately out of, or is connected with an illegal or an immoral act, a court of justice will not lend its aid in its enforcement. . . .

"As a general rule, if any part of an entire consideration for a promise, or any part of an entire promise, be illegal, whether by statute or at common law, the whole contract is void. 'If a part of the consideration is illegal, the whole consideration is void, because public policy will not permit a party to enforce a promise which he has obtained by an illegal act or an illegal promise, although he may have connected with this act or promise another which is legal.' Parsons on Contracts, vol. 1, p. 380." In *Fields v. Brown,* 188 Ill. 111, a lease was executed by the lessor for the undisclosed purpose of enabling the lessee to use the premises as a house of ill-fame, and the Supreme Court said (p. 115): "The lessee, in such case, even though *in pari delicto* with the lessor, ought not to be denied or deprived of the privilege of presenting the defense that the lease was illegal because of its being in violation of the public law of the State, for the defense is not allowed on the ground that the person presenting it is entitled to relief, but, as we said in *Goodrich v. Tenney,* 144 Ill. 422, 'upon principles of public policy and to conserve the public welfare.' " We have come to the conclusion that the fact that the written agreement does not on its face show that there was an agreement to stimulate the obtaining of the divorce decree does not prevent the defendant from setting that up as

a defense. If he could not make that defense it would be equivalent to holding that any contract would be enforceable even though its real purpose or consideration was vicious, immoral or contrary to public policy.

Plaintiff's motion to strike serves the same purpose as a demurrer and admits the truth of whatever is well pleaded. A mere reading of the affidavit of defense discloses that it constitutes a good defense. Hence the action of the court in striking the affidavit of defense and in entering judgment against defendant was erroneous. We, of course, do not know what the facts in the instant case are, other than as they are set up in the pleadings before us. It is common knowledge, however, that in divorce cases parties frequently agree on their property rights and appear in court and state their agreement before the chancellor. Indeed, that practice appears to be sanctioned by the Supreme Court. "Had it [the contract] been signed after the divorce decree was entered, or had it been confirmed by the decree of the court and its provisions made a part of the decree, there is no question but that the contract would have been a legal and enforceable contract." (*Shankland v. Shankland, supra*, p. 531.) When this case goes back to the trial court it may be that in a reply plaintiff may be able to set up facts which will constitute a complete answer to the defense now presented. Whether or not the agreement was in fact entered into for the purpose of stimulating a divorce will depend on facts and circumstances introduced on a trial of the case.

For the reasons stated the judgment of the municipal court of Chicago is reversed, and the cause remanded, with directions to overrule plaintiff's motion to strike defendant's affidavit of defense, and for other proceedings not inconsistent with this opinion.

*Reversed and remanded with directions.*

John J. Sullivan and Friend, JJ., concur.