George B. Robbins, II, Appellant, v. Continental National Bank and Trust Company of Chicago et al., Appellees.

Gen. No. 42,547.

Opinion filed December 13, 1944. Released for publication January 4, 1945.

RUSSELL & BRIDEWELL and CASSELS, POTTER & BENTLEY, all of Chicago, for appellant; KENNETH B. HAWKINS and DAVID A. BRIDEWELL, both of Chicago, of counsel.

Winston, Strawn & Shaw, of Chicago, for certain appellee.

Mayer, Meyer, Austrian & Platt, of Chicago, for certain other appellee; Walter H. Jacobs, Arthur D. Welton, Jr., Paul M. Godehn and Durmont W. McGraw, all of Chicago, of counsel.

Mr. Justice Lupe delivered the opinion of the court.

On July 10, 1940, George B. Robbins, II, filed his complaint in the circuit court as case number 40 C 6371 to vacate and set aside a decree of the superior court which was entered on July 14, 1939. The complaint filed is in the nature of a bill of review wherein it is claimed the decree should be reviewed and set aside because of errors of law on the face of the decree. The decree complained of was entered in the proceedings instituted by the Continental National Bank and Trust Company of Chicago as plaintiff, for the construction of a postnuptial agreement dated July 1, 1920, between George B. Robbins and Lillian E. Robbins, his wife. Said decree sought to be reviewed construed the postnuptial agreement of July 1, 1920 as not contrary to public policy of this State, and held that the same created a trust and was not in violation of the Statute of Wills of the State of Illinois. Plaintiff argues (1) that the postnuptial agreement appears on its face to relieve a husband from his common-law duty to support his wife and was intended to create a permanent separation between the husband and wife who were parties to said contract, and to stimulate a divorce; (2) that no trust could be created under the terms of the postnuptial agreement as the agreement contains no words conveying title to the Continental National Bank and Trust Company; and (3) the agreement is void as in violation of the Statute of Wills of the State of Illinois, because the agreement provides for distribution of securities and income

therefrom after the death of George B. Robbins.

Defendant contends that the trial court was correct in its ruling, and that the plaintiff was barred from maintaining this proceeding, as the court below was without jurisdiction of the subject matter; that plaintiff is barred by laches and limitations and the decree of July 14, 1939 is *res judicata* as to the plaintiff, as leave to appeal therefrom was denied him in this (Appellate) court on April 23, 1940.

The Civil Practice Act applies in the present case as the decree was entered in the year 1939. A bill of review or a bill in the nature of a bill of review may be filed within one year from the date of the entry of the decree.

At the time of the entry of the decree sought to be reviewed, plaintiff was a minor. It is well settled in this State that after a decree to which a minor is made a party, the minor may, during his minority, file his complaint to impeach such decree for error appearing upon its face, or may exercise the right after he becomes of legal age, within the time during which he could prosecute a writ of error to reverse the decree. (*Crane v. Stafford,* 217 Ill. 21; *Johnson v. Buck,* 220 Ill. 226; *Denk v. Fiel,* 249 Ill. 424; *Sharp v. Sharp,* 333 Ill. 267.) Plaintiff became of legal age on August 16, 1939, and (under the law of this State in effect at the time of the entry of the decree) had one year from said date within which to file his complaint. (*Schoknecht v. Prassas,* 320 Ill. 423; *Genz v. Genz,* 254 Ill. 161; *Knaus v. Chicago Title & Trust Co.,* 365 Ill. 588.)

Plaintiff filed his complaint in the circuit court wherein he sought to review a decree that was entered in the superior court of Cook county. The circuit court, on motion of the defendants, properly ruled that it had no jurisdiction to entertain the complaint, as it sought to review a decree of the superior court. (*Simmons v. Hefter,* 308 Ill. 292, 293.) One court of equity has no authority to exercise a revisory jurisdiction

over the decrees of another court of equity by correcting errors or setting aside or reversing a decree. Circuit and superior courts of Cook county have concurrent original jurisdiction, but neither court has any jurisdiction over the proceedings or records of the other. (*Mathias v. Mathias,* 202 Ill. 125; 30 C. J. S., Equity, § 637; 10 R. C. L. 568; *Sheaff v. Spindler,* 339 Ill. 540, 551; *People v. Sterling,* 357 Ill. 354, 367.) On October 24, 1940, the circuit court entered a further order finding that it lacked jurisdiction of the subject matter of plaintiff's complaint, and ordered the cause transferred to the superior court. Thereupon, the complaint was filed in the superior court and motions were made by certain defendants alleging the complaint was barred by limitation and that the superior court had no jurisdiction. The motions were overruled and the defendants then answered, and upon a final hearing of said cause a decree was entered dismissing the complaint for want of equity.

It is urged that the superior court was without jurisdiction of the subject matter because the order of transfer of October 24, 1940 entered by the circuit court was void, as the circuit court had dismissed the proceedings on October 4, 1940 on the ground of want of jurisdiction, and therefore, the order of dismissal not having been vacated, there was no cause before it to be transferred, and further, that since the circuit court was without jurisdiction of the subject matter the superior court could not have acquired jurisdiction by virtue of the order of transfer, since the jurisdiction of the superior court depended entirely upon the order of transfer, and that the superior court was devoid of jurisdiction of the subject matter as was the circuit court of Cook county.

We agree that the circuit court had no jurisdiction of the subject matter of this suit, as that court did not have revisory powers over the decree of the superior court, and that it had no power to alter or reverse a

decree entered in the superior court. The circuit court had the power under ch. 146, sec. 36, Ill. Rev. Stat. 1941, to transfer the cause to the superior court (*Central Illinois Public Service Co. v. Industrial Commission*, 293 Ill. 62) and the only point that could be urged is, after the case was dismissed by the circuit court nothing remained to be transferred. However, when the complaint in the present case was filed in the superior court it became and was a suit pending in that court, regardless of the fact that it had previously been filed in the circuit court. Its validity was derived from its being filed in the superior court, and not from the order of transfer of the circuit court. The order of transfer entered by the circuit court could not affect in any way the right of plaintiff to file his complaint in the superior court. We must, therefore, treat the proceedings as if originally filed in the superior court on the day that the complaint was actually filed in the superior court. Defendants have answered the complaint filed in the superior court, and it must be held that the present proceeding is based upon the complaint and answer filed in said cause. Plaintiff claims that an infant who has been wronged by the decree of a court can maintain an original bill for relief and that, unlike an adult, he may question such a decree without applying for a rehearing or filing a bill of review.

This doctrine was first laid down in the case of *Loyd v. Malone*, 23 Ill. 43, and has since been followed by our courts, the last of which cases is *Sharp v. Sharp*, 333 Ill. 267. The above cases establish the right of a minor to file his complaint to impeach a decree for fraud or errors apparent on the face of the decree. We are unable to find a holding wherein a minor had the right to file an original complaint to impeach a decree for errors apparent on the face of the decree in any court other than the court wherein such a decree is entered. We do not feel that the decisions relied upon by plain-

tiff in effect hold that a minor is placed in a different category, although they state the principle that a minor may file an original bill.

A court without jurisdiction of the subject matter of a cause cannot have jurisdiction conferred upon it merely because a minor is the plaintiff. The superior court had jurisdiction of the subject matter, not because of any prior proceedings in the circuit court, but because the suit was properly filed in the superior court. The defendants did not have to follow the case in the superior court, and were entitled to be served with process from the superior court, but they did appear, and the court thereby obtained jurisdiction of the persons of the defendants. Thus the superior court had jurisdiction of the persons and of the subject matter of this cause.

The motion filed by certain defendants in the superior court, alleging that the plaintiff was barred by laches and limitations was overruled and the court then proceeded to a decree upon the pleadings filed in the cause and upon the merits of the case. The defendants have filed no cross-error in this court attacking the order of the court overruling the motion of the defendants which alleged that the complaint was barred by laches and limitations, and have made no argument in their briefs on that point. We therefore hold that the defendants have waived the point made with reference to laches and limitations.

The parties, through their respective attorneys, have entered into a stipulation of facts, so that there are no controverted questions as to the facts in this record. The postnuptial agreement involved in this proceeding is dated July 1, 1920 and was entered into between George B. Robbins, husband, Lillian E. Robbins, his wife, and the Continental National Bank and Trust Company of Chicago, as trustee. It provided in its preamble that George and Lillian were living separate and apart and that he desired to provide for the

support and maintenance of his wife, and he agreed to pay his wife at the office of the trustee the sum of $1,500 per month, commencing on the 10th day of July 1920, and payable monthly in like amounts for and during the life of his wife, and that should he die before the death of his wife the obligation to make the monthly payments of $1,500 should remain and be binding upon his heirs, executors and administrators and upon his estate. To secure said monthly payments he had deposited with the trustee securities worth not less than $300,000, and agreed the total value of the securities deposited should at all times be maintained at not less than $300,000. It further provided that he released unto her and she released unto him all right, title and interest (including the contingent right of dower and homestead, right of inheritance, and all other rights under any statute of descent or distribution . . . ) which they had or at any time in the future might have, in any of the property owned or acquired by the other. The contract further provided that she would not "in any manner, directly or indirectly, incur any indebtedness for which he may be held liable; that she will promptly pay any and all debts or obligations which she may incur or for which she may be liable," and contained the further provision, "This agreement is expressly made and intended by each of the parties hereto, irrespective of whether the relation of husband and wife now existing between the parties shall continue, to be a mutual release, relinquishment and conveyance of all right, title and interest that each now has or hereafter during the lifetime of each or at the death of either of said parties hereto may have, in all property both real and personal of the other, respectively; and it is the intention of the parties hereto mutually to release and waive all benefit of the laws of the State of Illinois relating to husband and wife, dower and homestead, and forever to bar each other respectively from any action

to recover any interest that either may now have or hereafter during the lifetime or at the death of either of the parties hereto, may acquire in the property, both real and personal, of the other.''

At the time of the making of the contract, George B. Robbins and his wife were living separate and apart. On July 10, 1922, about 18 months after the agreement was entered into, the wife filed suit for divorce against her husband in the superior court of Cook county and obtained a decree on the ground of desertion, which decree recited, ''The question as to alimony and solicitor's fees has been settled between the parties out of court, and therefore no provision is made for the same herein.'' In 1932 there was default by Robbins in the $1,500 monthly payment and, in accordance with the provisions of the postnuptial agreement, the trustee took over the collection of income from the deposited securities.

The plaintiff herein is the grandson of George B. Robbins and is a legatee under his will, and as such interested party filed his original complaint in the nature of a bill of review to vacate and set aside the decree of July 14, 1939. The trial court dismissed the complaint and this appeal followed.

It is contended by plaintiff that the agreement of July 1, 1920 was intended to create a permanent separation of the spouses and to stimulate a divorce.

We have carefully examined the record and nowhere can it be found that the agreement created or attempted to create a permanent separation of the parties, or that it stimulated a divorce. On the contrary, it shows that the parties had been separated for some time prior to the agreement and we must assume that the separation was due to the fault of the husband, as the wife secured a divorce some 18 months thereafter, charging desertion, and that under the law at the time of the entry of the decree the period of desertion required was at least two years prior to the institution of the suit.

Plaintiff further contends that the postnuptial agreement of July 1, 1920 was void from its inception for the reason that under the agreement the wife discharged or released her husband from his common-law duty to support her and therefore the agreement is contrary to the public policy of this State. A contract between husband and wife in which it is attempted to have a wife discharge her husband from his legal obligation to support and maintain her is contrary to public policy and, therefore, void. (*Lyons v. Schanbacher,* 316 Ill. 569; *VanKoten v. VanKoten,* 323 Ill. 323; *Vock v. Vock,* 365 Ill. 432; *Berge v. Berge,* 366 Ill. 228; *Sibert v. Suhy,* 315 Ill. App. 147.) A wife may, by a postnuptial contract with her husband, based upon a valuable consideration, release to him her rights in his property and estate, and thereby extinguish all her rights as a widow, including the right of dower, and the fact that the parties are living separate and apart does not affect the validity of the contract. (*Stokes v. Stokes,* 240 Ill. 330; *Edwards v. Edwards,* 267 Ill. 111; *French v. French,* 302 Ill. 152; *Kohler v. Kohler,* 316 Ill. 33; *VanKoten v. VanKoten,* 323 Ill. 323.) It is asserted by plaintiff that the agreement is not a legal separation agreement providing for support and maintenance of a wife living separate and apart from her husband, and that the agreement falls within that class of agreements condemned by the supreme court, as it provides for the release of the legal obligation of the husband to maintain and support his wife.

There is no release of support (in so many words) by the wife, so plaintiff claims that such release of support can be reasonably inferred from the two provisions of the agreement: (1) that she would not, directly or indirectly, incur any indebtedness for which her husband might be liable, and that she would promptly pay all her debts; and (2) that she released and waived all benefit of the laws of the State of Illinois relating to husband and wife.

The contention is thus made that the release of support by the wife can be fairly inferred from these provisions of the contract. With this contention we cannot agree.

The preamble to the agreement recites that the parties are living separate and apart, and that the husband desires to provide for the support and maintenance of the wife. There is no release in appropriate words by the wife of the legal obligation of the husband to support and maintain the wife. In every case in which our courts have held that the contract between the husband and wife was contrary to public policy, there was a direct release in so many words of the legal obligation of the husband to support and maintain the wife. In the case of *Lyons v. Schanbacher,* 316 Ill. 569, the contract contained a provision that the wife "hereby wholly and absolutely releases and relinquishes and waives all legal right which she may have to support or contributions for her support from her said husband, John E. Lyons, from this time henceforth." This provision rendered the agreement invalid. In the case of *VanKoten v. VanKoten,* 323 Ill. 323, the court in referring to the agreement between the parties said: "In the instant case one of the material provisions of the agreement was 'the said party of the second part hereby releases all claims, rights, title or interest to the party of the first part from making any claim for support or maintenance in any manner from the party of the first part.'" This provision was held to invalidate the contract. In the case of *Vock v. Vock,* 365 Ill. 432, the court said (p. 433): "At the time of their separation they entered into a postnuptial contract under the terms of which the husband paid the wife $5,000.00 in cash for a release of all her rights in his property and from all obligations of future support." Because of the provision with reference to the release of support, the court held the agreement void as contrary to public policy. In the

case of *Berge v. Berge*, 366 Ill. 228, the court in referring to the agreement between the husband and wife said (p. 230):

"The agreement between Berge and wife contained, among further provisions, the following: 'That the parties will live apart and neither will remarry unless they agree to vacate this agreement; that neither will molest the other; that Lena shall not contract any debt for which Fred shall be liable, and neither she nor any other person or persons on her behalf or with her authority, consent or procurement, shall or will institute any suit or civil process or proceedings whatever against the said husband, either for separate maintenance, alimony or support, it being expressly understood and agreed that the aforesaid conveyances by the parties shall be in lieu of all rights of said parties hereto,' etc."

The court, in passing on the said agreement, said (p. 231.):

"She undertook to bind herself not to bring, or permit to be brought, any proceedings against her husband to enforce such legal duty. Such release on her part was clearly a material consideration for the making of the instrument. Husband and wife may not make a contract by which an essential condition thereof is, that the wife discharges her husband from his legal obligation to maintain her. Such contracts are against public policy."

In the case of *Sibert v. Suhy*, 315 Ill. App. 147, the agreement between the husband and wife contained a release in the following words:

"of all mutual right of support, and it is the intention of the parties hereto to mutually release and waive all benefit of the laws of the State of Illinois, relating to husband and wife, dower, homestead, mutual support, etc., and forever bar each other, respectively, from any

action to recover any separate maintenance or support."

The court held the agreement void as against public policy.

Thus all of the cases to which we have been referred, hold separation agreements invalid as contrary to public policy because of a wife's release of the legal obligation of the husband to maintain and support the wife, contain direct language which attempts to release the husband of such legal obligation.

In the adjudicated cases where there is no direct release of support but an agreement between a husband and wife who are living separate and apart, providing for the payment of some monthly sum for the support of the wife, our courts have held that a post-nuptial agreement adjusting and settling their mutual rights in each other's property may be lawfully made, and a provision in any such contract that the husband will pay to the wife or to a trustee a certain sum each month for her support is not contrary to public policy. In the case of *Shankland v. Shankland,* 301 Ill. 524, the court said (p. 532) :

"In Bishop on Marriage, Divorce and Separation (Vol. 1, sec. 1278) it is stated as the law that where a separation has already taken place between husband and wife, or it is in agitation and immediately follows, a provision for the wife's support, (separate maintenance) if on an adequate consideration, will be enforceable, but will not if made during cohabitation and no separation ensues. It was held by this court in *Ross v. Ross,* 69 Ill. 569, that where a husband is living separate and apart from his wife by consent, or if he acquiesces in her leaving him, he is liable for her necessary support. In *Phillips v. Meyers,* 82 Ill. 67, it was held that where a husband is under legal obligation to support his wife, an agreement on his part to pay money to a trustee for her use, without any promise or agreement on her part, is founded on a sufficient

consideration and binding on him and enforceable at law.''

In the case of *French v. French,* 302 Ill. 152, a wife was living separate and apart from her husband without any fault on her part, and the husband made an agreement to pay her, so long as they should live separate and apart, $175 per month on the first of each and every month. The court in deciding that such contract was not contrary to public policy said (p. 161) :

''We do not think the agreement entered into between the parties for separate maintenance comes within the rule that makes such agreements void as against public policy.''

In the case of *VanKoten v. VanKoten,* 323 Ill. 323, the court said (p. 326) :

''Agreements between husband and wife for a separation are not *per se* illegal or invalid, but where a husband and wife are living separate and apart, or where the circumstances are such that they can no longer congenially live together with the mutual confidence and implicit faith in each other which the sanctity of the marriage relation demands, or where the relations between them are such as to render the separation necessary for the health or happiness of one or the other of them, an agreement between them, fairly and understandingly entered into, adjusting and settling their mutual rights in each other's property, may be lawfully made (*Lyons v. Schanbacher,* 316 Ill. 569), and a provision in such contract under such circumstances that the husband will pay to the wife a certain sum each month for her support is not void as against public policy.''

In the case of *Henderson v. Henderson,* 290 Ill. App. the court said (p. 345) :

''The parties can make no valid agreement to live in separation, because cohabitation is a legal duty arising

out of the marital relation. But the husband may bind himself to support the wife, since that is but one of the duties he assumed at marriage, and such agreement does not violate the policy of the law. Nelson on Divorce, Sec. 553.''

In the case of *Henderson v. Henderson,* 290 Ill. App. 448, the court said (pp. 460, 461):

''The separation agreement itself was valid and not contrary to public policy. It was entered into according to its terms after the parties had separated and were living apart. It contained a provision under which the husband was obligated to support the wife and the courts have recognized the right of a husband and wife to enter into an agreement to live separate and apart, provided provision is made for the wife's support in the agreement.''

The provision of the agreement between George B. Robbins and Lillian E. Robbins that she would not incur any obligations for which her husband might become liable and that she would pay her debts promptly is not a provision for the release of the support of Lillian E. Robbins. In the case of *Kohler v. Kohler,* 316 Ill. 33, the contract contained a provision ''that the wife could not incur or contract any debts on the husband's credit,'' and the court sustained the contract as a valid contract. The provision may have been inserted in the contract here involved for the purpose of protecting George B. Robbins from the annoyance of suits by creditors of Lillian E. Robbins. Robbins probably did not want any creditor of Mrs. Robbins to appeal to him for payment of an obligation of his wife. He probably felt that as long as he was paying the $1,500 per month for the support of his wife, that she should not use the money provided by him for her support for purposes other than her support and then refer her creditors to him. This was perfectly legitimate and it was the duty of Lillian E. Robbins under

the agreement to expend the money provided for her support and not expend it in other ways and leave debts incurred for her support unpaid. And under the contract, if George B. Robbins did not provide the $1,500 per month, Lillian E. Robbins, of course, would be relieved of her obligation under the agreement to pay her debts, and George B. Robbins could be held liable for her support and maintenance.

The portion of the agreement which states, "it is the intention of the parties hereto mutually to release and waive all benefit of the laws of the State of Illinois relating to husband and wife, dower and homestead" concludes that same is "forever to bar each other respectively from any action to recover any interest that either may now have, or hereafter during the lifetime or at the death of either of the parties hereto may acquire, in the property, both real and personal, of the other." There is not one word in this paragraph about any release of support, and in our opinion the release referred to was a mutual release of property rights with no consideration whatsoever given to the question of a release of support. The reason for the making of the agreement is stated in its preamble to provide support for the wife, and if it had been the intention of the parties that a release of support were intended, it would certainly have been set up in appropriate language. Also, if this provision had been intended to operate as a release by Lillian E. Robbins of her future support and maintenance, it is peculiar that such release by said Lillian E. Robbins should have been placed in a paragraph which refers to mutual releases as to dower, inheritance, etc. If this wording should be construed as a release of future support by said Lillian E. Robbins, it would have to be taken as a release by George B. Robbins, of any future support of him by Lillian E. Robbins and certainly there is no evidence of any such intention manifested in the agreement. Also, the agreement cannot be con-

strued to be a release of all future support of the wife under this agreement when Robbins was directly agreeing to support his wife by a payment of $1,500 per month, and furnishing security for such payment. So that any release (if intended) would have had to take the form of a provision in the contract to the effect that George B. Robbins would not be liable for the support of his wife beyond the sum of $1,500 per month. Such a provision would have had to take a much different form than be included in a mutual release of the parties releasing and waiving "all benefit of the laws of the State of Illinois relating to husband and wife." The provision is too vague and indefinite (when read in the connection in which it is placed in the agreement) to hold that the wife intended by such language to waive future support. In the case of *Edwards v. Edwards,* 267 Ill. 111, the contract between husband and wife provided that the wife for and in consideration of the release by her husband of his interest in her property, "releases, relinquishes, quit-claims, sells, assigns and conveys all her rights, title and interest which said second party, as the wife of said first party, under the laws of the State of Illinois, may have acquired or which she may hereafter acquire during the lifetime of said first party or at his death, by reason of the said marriage that now subsists between said parties hereto, in and to all the property, both personal and real, which now is or hereafter during the lifetime or at the death of said first party may be owned by said first party." The court held the contract perfectly proper and the release good in law. We are of the opinion that the language relied on by plaintiff as above set forth was not intended as a release of support by the wife.

The agreement provided for the support payments of $1,500 per month to continue after the death of George B. Robbins, and he in the agreement bound his executors, administrators and assigns to continue to

pay said monthly sum of $1,500 per month to said Lillian E. Robbins until the time of her death. This provision shows that the purpose of the contract is correctly set forth in the preamble as being to provide for the support of Lillian E. Robbins. If the contract was made for such purpose, it would not have been made in contemplation of a release of the legal obligation on the part of George B. Robbins to support his then wife. Contracts between husband and wife, which have been declared invalid by our courts, contained a release of the legal obligation of the husband to support the wife and, in practically every instance, a lump sum payment or a conveyance of a piece of property was made at the time of the making of the agreement. In this case there was no lump sum payment or conveyance, but a direct obligation to pay $1,500 each month during the lifetime of the wife even after the death of the husband.

To hold the agreement invalid would deprive Helen Robbins Conroy of her rights (if any) under the agreement, to which she might be entitled at the time of the death of Lillian E. Robbins.

We, therefore, hold that said agreement does not provide for the release of the legal obligation of George B. Robbins to support his wife, and that same is not void for that reason.

The next contention of plaintiff is that the agreement is void because its purpose and effect was to stimulate a divorce. There is no reference in the agreement to a divorce or separate maintenance proceeding, and the fact that 18 months after the agreement was signed Lillian E. Robbins instituted divorce proceedings cannot in any way affect the construction of the contract. In the case of *Shankland v. Shankland*, 301 Ill. 524, the court said (p. 533):

"It will thus be seen that there are respectable authorities which hold that such a contract as the one entered

into in this case is not necessarily void because it is entered into prior to and pending divorce proceedings. Where it is apparent that such a contract is entered into for the purpose of stimulating or inducing one party or the other to institute divorce proceedings, or that the same is for the purpose of purchasing a decree of separation, or amounts to collusion between the parties to secure a divorce, such a contract ought to be, and is, deemed contrary to public policy and void. As there is no indication in this case that any such fraud or collusion was practiced or intended, we are disposed to hold that the contract in question is a valid and binding contract.''

In the case of *Morrissey v. Morrissey,* 299 Ill. App. 173, the court held that the defense of illegality was good on its face but said (p. 184):

''When this case goes back to the trial court it may be that in a reply plaintiff may be able to set up facts which will constitute a complete answer to the defense now presented. Whether or not the agreement was in fact entered into for the purpose of stimulating a divorce will depend on facts and circumstances introduced on a trial of the case.''

It does not appear on the face of the agreement that the agreement was entered into for the purpose of stimulating a divorce and it, therefore, does not appear on the face of the proceedings sought to be reversed that the agreement was made for the purpose of stimulating a divorce. If that question of fact was tried by the court which entered the decree of July 14, 1939, such question of fact cannot be reviewed in these proceedings. None of the requisites set forth in the *Shankland* case above cited herein appear. We, therefore, hold that said agreement was not made for the purpose of stimulating a divorce, and is not contrary to public policy for that reason. We have considered

the contention of plaintiff that the agreement of July 1, 1920, contains no words conveying title to the securities deposited with the trustee, and are satisfied that delivery of the securities to the trustee, endorsed in blank, divested George B. Robbins of all title thereto and vested the title to said securities in the trustee subject to the terms of the agreement. The agreement created a trust and not a bailment, and said agreement did not terminate upon the death of said George B. Robbins.

We are led to this conclusion for the following reasons:

1. George B. Robbins indorsed the securities in blank and delivered same to the trustee under the terms of the agreement. This amounted to a delivery and passing of title for the purposes of the trust.

2. George B. Robbins during his lifetime acquiesced in the position that title to said securities had passed to the trustee, and in his will set forth that he had made the 1920 agreement and provided therein for Lillian E. Robbins and Helen Robbins Conroy.

3. The trustee had such title as was necessary to carry out the terms of the trust, and the carrying out of the terms of the trust made it necessary that title pass to the trustee. (*Starr v. Moulton,* 97 Ill. 525; *Cherry v. Greene,* 115 Ill. 591; *Marsh v. Reed,* 184 Ill. 263.) We are of the opinion that the agreement was in its nature a trust, and that the securities were delivered under the terms of the trust to the trustee. No question of delivery or testamentary disposition can thus arise under the terms of the agreement.

Holding as we do, that the agreement constituted a trust and not a bailment, necessarily decides the contention of plaintiff, that the agreement was testamentary in form, adversely to plaintiff's contention.

The interest of Lillian E. Robbins and the other beneficiaries took effect when the contract of 1920 was executed and the securities delivered to the trustee.

The deposited securities became impressed with a trust which was irrevocable, and the trust was irrevocable during the lifetime of George B. Robbins. The beneficiaries of the trust having acquired their interest during the lifetime of George B. Robbins, the agreement does not infringe the requirements of the Statute of Wills. (*Williams v. Evans,* 154 Ill. 98; *Patterson v. McClenathan,* 296 Ill. 475.)

We are, therefore, of the opinion that the construction placed by the decree of July 14, 1939, was correct. It follows that the chancellor did not err in this proceeding in holding that said decree of July 14, 1939, should not be vacated and set aside. The decree of the chancellor was correct and is affirmed.

*Affirmed.*

BURKE, P. J., and KILEY, J., concur.